**LUMBERMENS MUTUAL CASUALTY COMPANY, Defendant, Appellant,**

v.

**EMPLOYERS' LIABILITY ASSURANCE CORP., Limited, et al., Plaintiffs, Appellees.**

No. 5243.

United States Court of Appeals
First Circuit.

Feb. 18, 1958.

**464**

David H. Fulton, Boston, Mass., with whom Robert Fulton, Boston, Mass., was on brief, for appellant.

Philander S. Ratzkoff, Boston, Mass., with whom Parker, Coulter, Daley & White, Boston, Mass., was on brief, for Employers' Liability Assurance Corp., Ltd., appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

WOODBURY, Circuit Judge.

This appeal is from a judgment in a suit for a declaratory judgment brought to determine which one of two insurance companies is the insurer of the Robert Northridge Furniture Company, Inc., and two of its employees, with respect to any liability they may have for personal injuries sustained by one Peloquin. Federal jurisdiction under Title 28 U.S. C. § 1332(a) (2) is clear, for it is not disputed that the matter in controversy exceeds the sum or value of $3,000 exclusive of interest and costs, and the plaintiff, Employers' Liability Assurance Corporation, Ltd., is a foreign corporation, the defendant, Lumbermens Mutual Casualty Company, is an Illinois corporation, the defendant, Northridge, is a Massachusetts corporation, and its employees involved herein, the defendants Bell and Fleming, and also the defendant Peloquin, the tort claimant, are all citizens of that Commonwealth.[1]

The following facts are not in dispute.

In July, 1954, Northridge sold some new furniture to Peloquin taking some of his old furniture in trade. On July 19, 1954, Northridge sent its employees, Bell and Fleming, with its truck to pick up Peloquin's old furniture which was in his second floor apartment. They parked the truck at the curb in the public highway adjacent to Peloquin's residence and started to remove his old furniture. After removing some smaller pieces to the ground, they undertook with Peloquin's assistance to lower a divan from the second floor porch to the ground by means of a web strap. In the course of this operation Peloquin fell off the porch receiving injuries which he claims were caused by the negligence of Northridge's employees.[2]

At the time of Peloquin's injury Northridge had a comprehensive policy written by Employers' covering its liability for personal injury to others arising out of the conduct of its business excluding, however, injuries arising out of the "ownership, maintenance or use, including loading or unloading of * * * automobiles while away from [its] premises or the ways immediately adjoining." And at the time it also had a policy written by Lumbermens covering its liability arising out of the use of its truck wherein as extended coverage it was provided that "use of the motor vehicle for the purposes stated includes the loading and unloading thereof."

The District Court accurately stated the precise issue in this case to be "whether the lowering of the divan from the porch is included within the term

---

1. It is conceded that the coverages of the two insurance companies involved do not overlap and also that there is no hiatus between their coverages. Thus a decision in favor of one insurance company amounts to a decision against the other. But, since Lumbermens Mutual is an Illinois corporation and the other defendants are a Massachusetts corpora- tion and three Massachusetts citizens, we are not confronted here with the jurisdictional question considered by this court in Connecticut Indemnity Co. v. Lee, 1 Cir., 1948, 168 F.2d 420, 423.

2. Peloquin has brought an action in tort against Northridge and its two employees in Massachusetts to recover for his injuries.

'loading' as used in these policies. If it is, then Lumbermens is the insurer with respect to the injuries of Peloquin; if not, Employers' is the insurer." [148 F.Supp. 263] The court concluded that Employers' was not the insurer but that Lumbermens was and entered judgment accordingly.[3] It thereupon took this appeal.

It is clear that Massachusetts law applies. But in the Lee case cited in footnote 1 above, which is practically the mirror image of this one, we had occasion to observe that: "Although the 'ownership, operation, maintenance, control or use' clause has often been interpreted by the Massachusetts courts, no decision concerning the loading and unloading clause by a Massachusetts court has been cited to us, nor have we found any." We find ourselves in the same situation now. Therefore, in this case as in Lee, we are forced to rest our decision on collateral rather than direct authority.

In the Lee case this court held that under Massachusetts law the "loading and unloading" clause of an automobile liability policy obligated the insurer with respect to the claim of a pedestrian who fell down a sidewalk elevator well the flush doors covering which the insured's driver had opened as a preparatory step to removing goods from his truck parked at the curb and placing them on the elevator. In that case the most pertinent Massachusetts cases are analysed in some detail. No useful purpose would be served by repeating that analysis here. It will suffice to say that on the basis of our analysis we concluded that under Massachusetts law an accident fell within the coverage of the unloading clause when there was some "causal relation between the unloading and the accident," and that there was

sufficient causal relation when the action which resulted in the injury was "necessary in order to carry out the delivery" and was "an integral part of the unloading process." That is to say, this court thought from its analysis of the Massachusetts decisions that the Supreme Judicial Court of that Commonwealth when confronted with the question would not only hold that the unloading clause extended coverage beyond that of the "use" clause standing alone, but also would line up with the majority of the states[4] and adopt the more liberal "complete operation" test for coverage rather than the narrower "coming to rest" test, which in the case of loading, would extend coverage only with respect to accidents occurring in the course of actual lifting, rolling or sliding goods onto the truck and stowing them in place on board.

It is true that application of the "complete operation" test may often require drawing fine lines in more or less arbitrarily selected places. But we are not aware of any recent Massachusetts decision causing us to change our previous view as to what the Massachusetts law will be when definitely declared by its highest court. This court thought in 1948, and still thinks, that the breadth with which the "ownership, operation, maintenance, control or use" clause has been interpreted in Massachusetts, indicates rather clearly that the "loading and unloading" clause would also be liberally construed. Indeed, without a liberal construction of the latter clause its coverage would be no broader than the coverage of the "use" clause as construed in General Accident Fire & Life Assur. Corp. v. Hanley Oil Co., 1947, 321 Mass. 72, 72 N.E.2d 1, 171 A.L.R. 497, wherein the Supreme Judicial Court of Massachu-

3. Lumbermens did not seek an adjudication that its policy did not cover with respect to Peloquin's claim. However, the case was tried on the theory that the coverage of the policies was mutually exclusive and Lumbermens does not contend that the court was not empowered by the pleadings to adjudicate affirmatively that its policy covers the claim.

4. See 160 A.L.R. 1259; Pacific Automobile Ins. Co. v. Commercial Casualty Ins. Co., 108 Utah 500, 161 P.2d 423, 160 A.L.R. 1251; Wagman v. American Fidelity & Casualty Co., 304 N.Y. 490, 109 N.E.2d 592; Raffel v. Travelers Indemnity Co., 141 Conn. 389, 106 A.2d 716.

setts said that there was no occasion to consider the "loading and unloading" clause for the reason that the "use" clause obligated the insurer to its insured with respect to the latter's liability for a fire caused when fuel oil pumped through a hose from its motor truck in the street into an outside filler pipe leading to a storage tank in the cellar of a house overflowed and hours later ignited and the house was burned. There can be little doubt that the "loading and unloading" clause is intended to broaden the definition of the "use" of a motor vehicle. Thus the holding of the Supreme Judicial Court of Massachusetts that the standard "use" clause covers with respect to a fire caused by the careless unloading of an oil truck hours before, clearly indicates that in Massachusetts the extended coverage of the "loading and unloading" clause would not be determined by the narrow "coming to rest" test, for if it were, the extended coverage of the "loading and unloading" clause would be no broader, if as broad, as the standard "use" clause as construed in the Hanley Oil Co. case.

 Removing Peloquin's divan from his house was without any doubt at all necessary in order to load it onto the truck standing at the curb. And lowering it from the second floor porch to the ground was certainly an integral part of the loading process. Thus there was sufficient causal relation between the loading of the vehicle and the accident for the latter to fall within the coverage of the "loading and unloading" clause as we understood the law of Massachusetts in the Lee case and as we still understand the law of that Commonwealth.

The judgment of the District Court is affirmed.

MAGRUDER, Chief Judge (dissenting).

This is merely a fight between two insurance companies as to which one has contracted to assume liability for certain personal injuries. Admittedly the coverages expressed in the two insurance policies dovetail perfectly and do not overlap. It is not a case where one has to strain, to construe the language of an insurance policy against an insurance company, in order to reach a conclusion of liability. One or the other of the two companies is surely liable for the particular injuries.

Appellant Lumbermens Mutual Casualty Company primarily insured the Robert Northridge Furniture Company against its liability for personal injuries received in the course of business arising out of the ownership, maintenance or use of a certain truck, the term "use" of the motor vehicle to include the loading and unloading thereof. Appellee, Employers' Liability Assurance Corp., Ltd., has in force a comprehensive policy insuring the Northridge Company against liability for personal injuries occurring in the course of business, excluding, however, personal injuries arising out of the ownership, maintenance or use (including loading or unloading) of any motor vehicle.

I have some doubt about the correctness of our decision in Connecticut Indemnity Co. v. Lee, 1 Cir., 1948, 168 F. 2d 420. In any event, the case seems distinguishable on its facts, for there the truck driver was at the time actually engaged in unloading packages from the motor vehicle, having opened the elevator door on the sidewalk as a necessary preliminary to the contemplated delivery. In the present case appellee conceded that on its argument the personal injuries would still have been received in the course of the "loading" of the motor vehicle, even though the truck had not yet arrived at the street adjacent to Peloquin's residence. This seems to me to be a *reductio ad absurdum*. The injury received by Peloquin is much too remote from the maintenance or use of the truck, and would seem more naturally to fall within the comprehensive liability policy issued by appellee.