**ST. PAUL MERCURY INSURANCE COMPANY, a Minnesota corporation, Plaintiff,**

v.

**Dewey HUITT, individually and dba Dewey Huitt & Son, Russell Ontis, Ruth V. Withers, Guardian of James A. Withers, Mentally Ill, Auto-Owners Insurance Company, a Michigan corporation, Defendants.**

**Civ. A. No. 4173.**

United States District Court
W. D. Michigan, S. D.
March 30, 1963.

---

**7.** Refer to footnote 6.

**8.** 29 U.S.C. § 412, quoted on Page 705.

710

Mitts, Smith & Haughey, Grand Rapids, Mich., David O. Haughey, Grand Rapids, Mich., of counsel, for plaintiff.

Rex W. Orton, Allegan, Mich., for defendant Dewey Huitt, ind. and Dewey Huitt & Son, and Russell Ontis.

Shivel, Phelps, Linsey & Strain, Grand Rapids, Mich., Leland D. Phelps, Grand Rapids, Mich., of counsel, for defendant Auto-Owners Ins. Co.

Ryan, Sullivan & Hamilton, Battle Creek, Mich., Ronald M. Ryan, Battle

Creek, Mich., of counsel, for Mich. National Bank, Guardian of James A. Withers, Mentally Ill, successor to Ruth V. Withers.

FOX, District Judge.

Plaintiff filed a complaint for declaratory relief on October 2, 1961. On September 25, 1962, plaintiff filed a motion for summary judgment in accordance with the prayer in the complaint for declaratory relief.

The accident causing plaintiff's complaint in this case occurred in Allegan, Michigan. A cement truck, owned by Ben Waanders & Son and driven and operated by their employee, was being unloaded by a crane owned by Dewey Huitt & Son, at the site of the construction of the General Telephone Company building. The crane was being operated by Russell Ontis, employee of Dewey Huitt & Son.

The ready-mix cement truck emptied its cement into the bucket of the crane, the crane picked it up and was in the process of moving or lowering the bucket when the boom of the crane gave way and struck James A. Withers.

Ruth Withers, the guardian of James A Withers, has commenced a suit in the Circuit Court of Allegan County, against Dewey Huitt and Hazel Huitt, d/b/a Dewey Huitt & Son, Russell Ontis and Clark Equipment Company, a Michigan corporation, for damages in the sum of $200,000. Plaintiff in this action for declaratory relief is the insurer of Dewey Huitt & Son, that is, Dewey Huitt and Hazel Huitt, d/b/a Dewey Huitt & Son.

A liability policy issued by Auto-Owners Insurance Company to Ben Waanders & Son was in force at the time of the accident. This policy contained the common omnibus and loading and unloading clauses.[1]

1. A. Bodily Injury Liability. To pay on behalf of the assured all sums which the assured shall become obligated to pay by reason of the liability imposed upon him by law for damages because of bodily injury, sickness or disease including death at any time resulting therefrom sustained by any person other than the assured and arising out of the ownership, maintenance or use of the automobile.

Section III—Definition of "Assured"
The unqualified word "Assured" wherever used in Coverages A and B and in other parts of this policy, when applicable to these coverages, includes not only the named assured, but also any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is with the permission of the named assured; or if the named assured is an individual, with the permission of an adult member of his household, who is not a chauffeur or domestic servant. The provisions of this paragraph shall not apply: (a) to any person or organization with respect to any loss against which he has other valid and collectible insurance; (b) to any person or organization with respect to bodily injury to or death of any person who is a named assured; (c) to any person or organization, or to any agent or employee thereof, operating an automobile repair shop, public garage, sales agency,

service station or public parking place, with respect to any occurrence arising out of the operation thereof; and (d) to any employee of an assured with respect to any action brought against said employee because of bodily injury to or death of another employee of the same assured injured in the course of such employment in an occurrence arising out of the maintenance or use of the automobile in the business of such assured.

Section V—Policy, Period, Territory, Standard Time, Purposes of Use.
This policy applies only to occurrences and to direct losses to the automobile insured, which are sustained during the policy period as stated in the Declarations while the automobile is within the United States of America, its territories or possessions, the Dominion of Canada, or Mexico, or while being transported between ports thereof, and is owned, maintained and used for the purposes stated as applicable thereto in the Declarations. The time of Effective Date and Expiration Date expressed in the Declarations is Standard Time at the address of the assured as stated in the Declarations. The term "pleasure and business" is defined as personal, pleasure, family, and business use. The term "commercial" is defined as used principally in the business occupation of the named assured as stated in the Declarations, including occasional use for personal, pleasure, family, and

The insurance policy issued by plaintiff St. Paul to Dewey Huitt contained an excess insurance clause, which, in effect, says that the St. Paul policy is to cover only those losses which are not covered by any other valid and collectible insurance which applies to that same loss.[2]

Plaintiff alleges that Dewey Huitt and Russell Ontis are insureds under the Auto Owners policy by virtue of the omnibus and loading and unloading clauses in the policy. It is also alleged that Auto Owners was given proper notice of the accident and asked to assume the defense of the action. This Auto Owners refused to do. Because of Auto Owners' refusal to accept the defense of the Allegan Circuit Court case, plaintiff brings this action for declaratory relief asking the Court to adjudge:

First, that Russell Ontis and Dewey Huitt are insureds and covered by the Auto Owners policy issued to Ben Waanders & Son;

Second, that the primary coverage for Dewey Huitt and the primary responsibility of defending him against the state court suit by Ruth Withers is with and upon the Auto Owners Insurance Company and not St. Paul Mercury Insurance Company;

Third, that the sole coverage for Russell Ontis and the sole responsibility for defending him against the lawsuit by Ruth Withers is with and upon the Auto Owners Insurance Company and not the St. Paul Mercury Insurance Company;

Fourth, that the St. Paul Mercury Insurance Company's "General Liability Policy" provides only excess coverage for Dewey Huitt and no coverage for Russell Ontis with respect to the lawsuit by Ruth Withers.

In its motion for summary judgment, plaintiff alleges that there is no good faith issue of fact to be tried, and that

pursuant to Rule 56 of the Federal Rules of Civil Procedure, plaintiff is entitled to a summary judgment in its action for declaratory relief.

On September 29, 1962, defendant Auto Owners filed a motion to dismiss the complaint for declaratory relief and in support of its motion alleged:

First, that the complaint does not state a cause of action for declaratory relief under 28 U.S.C. § 2201;

Second, that no controversy exists as to defendant Auto Owners, but that the controversy, if any, exists between this plaintiff and Dewey Huitt, individually, and d/b/a Dewey Huitt & Son;

Third, that no contractual relation exists between the plaintiff and defendant Auto Owners which could form the basis of a declaratory judgment action;

Fourth, that demand was made by letter upon Auto Owners to assume the liability which the plaintiff here seeks to impose upon Auto Owners.

The court's disposition of the plaintiff's motion for summary judgment necessarily resolves the issues raised by the defendant's motion to dismiss.

Defendant Auto Owners, in its brief filed concerning plaintiff's motion for summary judgment, also alleges that there are genuine fact questions concerning the following issues:

First, is the jurisdictional amount of $10,000, exclusive of interest and costs, involved in this controversy;

Second, was there any causal connection between the injury to James A. Withers and the unloading of the ready-mix truck of Benjamin G. Waanders & Son;

Third, was there a completed operation in the unloading of the concrete truck prior to the injury being inflicted upon James A. Withers;

other business purposes. Use of the automobile for the purposes stated includes the loading and unloading thereof.

2. 10. OTHER INSURANCE—If there is any other valid and collectible insurance which applies to any loss under this Policy, then this Policy shall act as excess insurance over and above such other insurance.

Fourth, had the concrete which was in the bucket come to rest as far as the concrete truck was concerned prior to the injury being inflicted upon James A. Withers?

Rule 56 of the Federal Rules of Civil Procedure provides in part, as follows:

"* * * (c) * * * The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages. * * *"

In considering the granting of a motion for summary judgment, the Court of Appeals of this Circuit said, in the case of McHenry v. Ford Motor Company, 6 Cir., 269 F.2d 18, at page 22:

"It is the established rule of the federal courts in construing rule 56 that a summary judgment should be entered only in cases where there is no genuine issue as to any material fact. * * * On considering such a motion the pleadings are to be liberally construed in favor of the party opposing the motion. * * * Moreover, the court is required to take the view most favorable to the party opposing the motion, giving that party the benefit of all favorable inferences that may be drawn from the evidence. * * *"

■ Being an extreme remedy, a summary judgment should be awarded only if and when the truth is quite clear. All reasonable doubt touching the existence of a genuine issue as to a material fact must be resolved against the party who has moved for the summary judgment. Yonkers Contracting Company v. Maine Turnpike Authority, D.C., 24 F.R.D. 205.

In determining whether the plaintiff's motion for summary judgment may be allowed and in determining whether there is a genuine issue between the parties, the court must look to the pleadings, affidavits, admissions and exhibits before us.

The issues are precisely drawn by the pleadings in this case and in accordance with the prayer of the plaintiff's complaint, the court has made the following findings:

■ First, the court is satisfied that Russell Ontis and Dewey Huitt are insureds and covered by the policy issued by Auto Owners Insurance Company to Ben Waanders & Son.

It is admitted by defendant Auto Owners (1) that the crane fell and injured James Withers while the crane was in the process of transferring cement from the ready-mix truck to the building forms; (2) that there still remained in the truck approximately one-half of the load of cement which had not been unloaded at the time James Withers was injured; (3) that the crane was owned by Dewey Huitt & Son and that it was operated at the time of the accident by Russell Ontis; and (4) that the cement truck was owned by Ben Waanders & Son and that Auto Owners had issued a policy to Ben Waanders as previously set out.

All the facts necessary to a judgment that Russell Ontis and Dewey Huitt were insureds under the Auto Owners policy have been admitted. Whether or not these facts constitute Ontis and Huitt "users" under the "loading and unloading" clause, and therefore "insureds", is a question of law for the court.

Defendant would have us rely on the Ohio Supreme Court decision in the case of Travelers Insurance Co. v. Buckeye Union Casualty Co., 172 Ohio St. 507, 178 N.E.2d 792 (1961). The distinction between that case and the instant case is concisely stated in an article by Norman E. Risjord entitled "Loading and

Unloading", 13 Vanderbilt Law Review 903, at 931.

"An interesting recent Ohio decision denied coverage for the stranger to the truck crew but not for the reason that he was a stranger. The insured truck in that case was driven to the premises of the Gulf Refining Company which maintained a place of business for the distribution of petroleum products. The truck driver parked the truck near the loading platform, opened the valves and prepared to load diesel fuel. An employee of Gulf handed down to the truck driver a loading pipe from which the diesel fuel had not been drained after a previous loading. As the pipe was lowered to the truck driver, oil suddenly spewed forth from the pipe into the face of the truck driver, causing him to lose his balance, fall, and sustain injuries. The Court held that, while Gulf was an insured under the omnibus clause of the truck policy if it was 'loading' the truck, at the time of this accident the truck driver had performed no act which would tie in the movement of the pipe to the act of loading the truck, so that Gulf was not using or responsible for the use of the truck at the time of the accident since it had not yet made connection and started the movement of the product; that there is a distinction between cases involving loading of goods and those involving loading of oil; that, in the loading of goods, the loading commences when the goods are put on a pushcar to be conveyed to the truck or when they have started to move from the place of rest to the vehicle, and the unloading ceases when the goods have moved from the vehicle to the place of rest; that, here, the truck was not yet within the contemplated use of Gulf nor was Gulf responsible for its use since no goods had started moving toward the tank in the process of loading; and that the availability of the truck for loading in and of itself would not bring it within the loading and unloading provision, since there must be some action which would indicate that the process had started to completion."

Plaintiff has cited two cases which seem more closely to bear on the issues in the present case. In Bituminous Casualty Corporation v. Travelers Insurance Co., D.C., 122 F.Supp. 197, the court extended the insurance of a truck being loaded by a power shovel to the operator and owner of the power shovel. It was pointed out in that case that the truck involved did not have a self-loading device. It was argued in this case that the ready-mix truck had its own device for unloading.

This fact alone is not determinative of whether or not the coverage is actually extended by the loading and unloading clause of Auto Owners' policy to Ontis and Huitt.

There may be circumstances where the self-unloading device may be sufficient to unload the ready-mix truck. But in this case it was necessary and essential that a crane be used to place the cement in the desired location. Under these circumstances, the unloading continued until the cement reached its desired position, and Ontis and Huitt were therefore engaged in the "unloading" of the ready-mix truck.

The court in the Bituminous case, at page 200, said:

"The loading and unloading clause obviously increases coverage beyond that of the usual 'ownership maintenance and use' clause, and the scope of the increased coverage is a matter on which the courts have taken different views. See, Note 160 A.L.R. 1259. But it seems evident as disclosed by the admitted facts herein that Wegman was 'loading' the truck within the meaning of the loading and unloading clause of the Travelers policy. That is, the accident occurred while Wegman was in the act of depositing the truckload

of lime into the truck. * * * But the injury to Williams would not have occurred *but for* the loading of the truck, and since Travelers expressly insured against liability arising out of the loading, without regard to who was doing the loading, it would follow that Wegman in loading the truck and using it for that purpose, was an insured within the meaning of the express terms of the policy and that the incident was caused by the operation, that is, in the process of loading the truck by the insured."

The accident in the case at bar occurred while Ontis was in the act of transferring the cement from the ready-mix truck to the forms. The injury to Withers could not have occurred *but for* the unloading of the truck.

Auto-Owners expressly insured against liability arising out of the unloading of the truck, without regard to who was doing the unloading. It follows that Ontis in unloading the truck and using it for that purpose, was an insured within the meaning of the express terms of the policy and the incident was caused in the process of unloading the truck by the insured.[3]

Another case strongly in support of the plaintiff's position is Travelers Insurance Co. v. General Casualty Co., D.C., 187 F.Supp. 234 (1960). Here the driver of a ready-mix truck was injured due to the negligence of the employee of a third party. The court found that the duty and obligation to defend the employee was upon the insurance company that issued the policy to the owner of the ready-mix truck. The court said at page 236:

"Here the vehicle involved was a transit-mix concrete truck owned by Patton & Linton, Inc., General's named insured. McKenna was injured while it was being unloaded, an essential function of this truck. He was being assisted by Coffin's employee, Rowe. Rowe's assistance was desired, if not expected, in view of the fact that Patton & Linton, Inc., had dispatched only one employee to deliver and unload the cement when it is evident that two persons were necessary to achieve the desired result. Rowe was thus a user of the truck in assisting in its unloading process."

The similarity with the present case is evident. The ready-mix truck required Ontis' assistance to place the cement in the forms, the desired result.

Therefore, the better reasoning in the cases leads us to find that Ontis and Huitt were "users" and therefore "insureds" under the Auto-Owners policy.

Secondly, the court is not satisfied that the primary coverage for Dewey Huitt and the primary responsibility of defending him against the lawsuit by Ruth Withers is with and upon Auto-Owners Insurance Company and not the St. Paul Mercury Insurance Company.

The complaint in the circuit court case demands damages in the sum of $200,000. The Auto-Owners policy is limited to liability not exceeding $100,000. It is true that the policy insuring Dewey Huitt issued by the St. Paul Insurance Company contains an excess clause.

This court is not unmindful of Citizens Mutual Automobile Insurance Company v. Liberty Mutual Insurance Company, 6 Cir., 273 F.2d 189 (1959), in which it was held "that when an excess clause in one automobile liability insurance policy conflicted with another clause in a second policy the excess clause was to be given its natural meaning and applied only upon the exhaustion of the policy limits of the other policy".

The excess clause in the St. Paul policy is as follows: "If there is any other valid and collectible insurance which applies to any loss under this policy, then this policy shall act as an excess insur-

---

3. For a collection of cases see those referred to in the Bituminous case and the Vanderbilt Law Review, supra.

ance over and above such other insurance."

In the present case, the claim against Huitt is asserted in the sum of $200,000. At this stage of the proceedings the court is in no position to determine whether the claim will be less than $100,-000, the limits of the Auto-Owners policy.

At present there is an overlapping of coverage. It is difficult to find a basis for concluding, under the circumstances presented here, that one has the primary risk and the other has only the secondary liability in defending the action brought in the Allegan Circuit Court against Huitt.

Huitt has two insurance coverages on the question of his liability. While he has by letter asked Auto-Owners to defend, this court cannot say that Auto-Owners has the sole obligation to defend. For the court to say so would be to rewrite Huitt's contract with the St. Paul Company.

The contract provides that St. Paul shall "defend any suit against the insured alleging injury * * * and seeking damage on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suits as it deems expedient; * * *".

■ Third, this court's previous holdings in this opinion lead irresistibly to the conclusion that the sole coverage for Russell Ontis and the sole responsibility for defending him against the lawsuit by Ruth Withers is not with and upon Auto-Owners. Because of the language of the policies, there is a dual responsibility to defend the Withers' action.

The policy issued by St. Paul is both a comprehensive general policy and an automobile liability policy. As far as clause B of the policy is concerned, this being the clause setting out liability for bodily injury other than automobile liability, Ontis is an "insured".[4]

The policy points out that "if the named insured is an individual this Insuring Agreement applies only in connection with the conduct of a business of which the Named Insured is sole owner". Ontis was employed in the conduct of the business of which the named insured, Dewey Huitt & Son, was the sole owner. He is an insured as far as the liability coverage of this policy goes.

■ Fourth, it is clear from what has been said above in this opinion that Russell Ontis is covered by the St. Paul policy, and that the excess coverage provision applies to him as well as to Dewey Huitt.

Lastly, Auto-Owners argues that there are certain genuine issues as to material facts and that, therefore, the motion for summary judgment should be denied.

Defendant's first claim is that the jurisdictional amount of $10,000, exclusive of interest and costs, is not satis-

---

4. II. SECTION B—BODILY INJURY LIABILITY OTHER THAN AUTOMOBILE. The Company agrees to pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person.

1. DEFINITIONS.

(A) INSURED. The unqualified word "Insured" includes not only the Named Insured but also (1) under Sections B and D, any executive officer, director or stockholder thereof while acting within the scope of his duties as such, and any organization or proprietor with respect to real estate management for the Named Insured. If the Named Insured is a partnership, the unqualified word "Insured" also includes any partner therein but only with respect to his liability as such. If the Named Insured is an individual this Insuring Agreement applies only in connection with the conduct of a business of which the Named Insured is sole owner, and (2) under Sections A and C, any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the Named Insured or with his permission, and any executive officer of the Named Insured with respect to the use of a non-owned automobile in the business of the Named Insured. * * *

fied in this action. Let it suffice to say that the suit in the Circuit Court for Allegan County by Ruth Withers seeks damages in the total amount of $200,000. At present, it is untimely to rule the amount in controversy does not exceed $10,000.

Defendant claims that there is a material question of fact as to whether or not there was a causal connection between the injury to James Withers and the unloading of the ready-mix truck. It is enough to repeat defendant Auto-Owners admission that the accident occurred while Ontis was in the act of transferring the cement from the ready-mix truck to the forms. The accident was a hazard incident to the unloading. Bituminous Casualty Corp. v. Travelers Ins. Co., D.C. Minn., 122 F.Supp. 197.

In Lumbermen's Mutual Casualty Co. v. Employers' Liability Assurance Corp., 1 Cir., 252 F.2d 463, 465, the court said:

"It will suffice to say that on the basis of our analysis we concluded that under Massachusetts law an accident fell within the coverage of the unloading clause when there was some 'causal relationship between the unloading and the accident,' and that there was sufficient causal relation when the action which resulted in the injury was 'necessary in order to carry out the delivery' and was 'an integral part of the unloading process.'"

But see Kaufman v. Liberty Mutual Insurance Co., 3 Cir., 264 F.2d 863.

Thirdly, defendant Auto-Owners claims there is a question of fact whether or not there was a complete operation in the unloading of the ready-mix truck prior to the injury suffered by Withers. Defendant admits, however, that there was still a half load of cement in the truck.

Michigan has adopted the "complete operation" rule in regard to the scope of loading and unloading clauses in insurance policies. Allstate Insurance Company v. Valdez, E.D.Mich., 190 F.Supp. 893.

In that case the court found that the defendant was in a "loading" process when as a preparatory step to placing a shotgun in the trunk of the car, defendant was engaged in ejecting shells from his loaded shotgun. In the instant case the crane was admittedly in the middle of unloading the truck when the accident occurred. The operation of unloading had not been completed.

Fourth, the defendant claims that the jury should decide whether or not the concrete which was in the bucket had come to rest as far as the concrete truck was concerned prior to the injury. Our answer to defendant's third claim controls here.

The essential facts are not in dispute, upon which the court bases its decision in this case. The motion for summary judgment is granted in part and denied in part, in accordance with this opinion.

An order may be drawn by the plaintiff in accordance with this opinion.