UNITED PACIFIC INSURANCE COMPANY, a Washington corporation, and Erna A. White, Plaintiffs,

v.

NEW AMSTERDAM CASUALTY COMPANY, a New York corporation, Defendant.

Civ. No. 63-341.

United States District Court
D. Oregon.

March 27, 1964.

Wayne A. Williamson, Mautz, Souther, Spaulding, Kinsey & Williamson, Portland, Or., for plaintiff.

Curtis Cutsforth, King, Miller, Anderson, Nash & Yerke, Portland, Or., for defendant.

EAST, District Judge.

It is agreed in the pretrial order that on June 12, 1961:

Defendant Willis Emmert (Emmert) was the owner and operator of an automotive "log bunk or tractor" (self-propelled) and a "log trailer" (not self-propelled), which vehicles, when conventionally and properly hitched together, are used as integrated vehicles in tandem for the purpose of transporting one or several sawlogs;

Defendant New Amsterdam Casualty Company, a New York corporation (Amsterdam) was the insurer of Emmert's vehicles under a conventional policy of public liability insurance;

Plaintiff Erna W. White (White) was engaged in a business allied with the automotive servicing field and was the owner of and used in his business a conventional automotive wrecker vehicle which was equipped with a self-powered winch, cable and boom;

Plaintiff United Pacific Insurance Company, a Washington corporation (Pacific) was the insurer of White's wrecker vehicle under a conventional policy of public liability insurance; and

Amsterdam's policy coverage of Emmert's vehicles, as far as we are from here on out concerned, provided:

## "INSURING AGREEMENTS

I. Coverage A—Bodily Injury Liability. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by *any person*, caused by accident and arising out of ownership, maintenance or *use of the automobile.*

\*   \*   \*   \*   \*   \*

"II. Defense, Settlement, Supplementary Payments. With respect to such insurance as is afforded by this policy for bodily injury liability and for property damage liability, the company *shall:*

(a) *defend any suit against the insured* alleging such injury \* \* and seeking damages on account thereof \* \* \*;

\*   \*   \*   \*   \*   \*

III. Definition of Insured.

(a) With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'insured' includes the named insured and, if the named insured is an individual, his spouse if a resident of the same household, *and also includes any person while using the automobile* \* \* \* provided the actual use of the automobile is by the named insured or such spouse or *with the permission of either.* (Emphasis supplied.)

\*   \*   \*   \*   \*   \*

(c) Use of the automobile for the purposes stated includes the loading and unloading thereof."

\*   \*   \*   \*   \*   \*

Exclusion C.

"This policy does not apply under coverages A and B \* \* \* while any trailer covered by this policy is used with any automobile owned or hired by the insured and not covered by like insurance in the company."

"(a) (1). \* \* \* the insurance with respect to any person or or-

ganization other than the named insured or such spouse does not apply:

" * * * to any person or organization, or to any agent or employee thereof, operating an automobile sales agency, repair shop, service station * * * with respect to any accident arising out of the operation thereof."

It appears from the evidence adduced, viewing it most favorably to Emmert, that:

White's business consisted of an automotive sales agency, repair shop and service station in that he held the dealership for the International trucks and equipment, made mechanical repairs to automotive vehicles, sold tires, gasoline and related automotive supplies to the general public and maintained the wrecker vehicle, among other equipment, to render service to his business customers for towing disabled, non-self-propelling vehicles with the attendant necessary hoisting and lifting thereof and for other heavy load-lifting purposes, in connection with his business as well as elsewhere, and that Emmert was a business customer to whom White had in the past furnished parts, repairs and services;

On June 12, 1961, Emmert was operating the log truck and trailer upon the highway at a time when the vehicles lost their load of logs, whereupon, a request or call of White's wrecker was made for the purposes of lifting the sawlogs from the ground to the Emmert vehicles and thereby reloading the vehicles with its cargo of logs;

While the truck and trailer vehicles were parked alongside the highway, an attempt was made through the hoisting or lifting features of the winch cable and boom on White's wrecker to accomplish the reloading mission, and in the course of that operation the wrecker-with-boom vehicle was overturned and the hoisting boom struck and injured Emmert; and

Thereafter, Emmert brought his action against White in the Circuit Court of the State of Oregon for the County of Lincoln, bearing Clerk's No. 23475 (State Court action), seeking recovery for injuries on alleged negligence on the part of White in the supply and operation of the wrecker-with-boom vehicle.

In these proceedings Pacific and White seek a declaration that Amsterdam's policy of insurance covers the incident and risk involved in the State Court action, which in turn requires Amsterdam to defend the same and provides primary liability coverage for White rather than Pacific's policy, or, in the alternative, that by reason of other insurance provisions the liability of White, if any, to Emmert should be shared between Amsterdam and Pacific on a pro rata basis in proportion to their respective policy limits.

## CONCLUSIONS

In view of this factual situation, it is manifest under the "definition of insured" provision of Amsterdam's policy that White is an "insured" thereunder and Amsterdam is under policy obligation upon notice and call to enter upon the defense on behalf of White in the State Court proceedings (St. Paul Mercury Ins. Co. v. Huitt, D.C., 215 F. Supp. 709 and its legion of precedent) unless Amsterdam has an out under either of the two mentioned policy exclusions. I hold that it does not.

## EXCLUSION C

Amsterdam's policy describes Emmert's trailer as being equipment to which policy coverage extends. The legal effect of this exclusion is to limit the policy coverage:

(a) Whenever the trailer is hitched to a prime mover in order to make use of the trailer, and

(b) Such prime mover is not designated in like coverage with Amsterdam.

Reviewing the situation here, the trailer was harnessed to its prime mover as integrated components in tandem then ready for use, and each of the components was designated for coverage in Amsterdam's policy. In this situation the trailer is being "used with * * *."

Emmert's tractor and, under no stretch of the English language, by the wrecker crane equipment then engaged in loading it. Accordingly, the exclusion does not apply.

### EXCLUSION (a) (1)

■ Amsterdam insists that White, while engaging his wrecker and boom equipment as a crane or other device in loading the sawlogs upon Emmert's in-good-repair, functionable and ready-to-go transport equipment, was then engaged in the conduct and operation of his "service station" business.

In this connection, the language of the exclusion, when rearranged so that we may handle it, reads as follows:

> The coverage of this * * * insurance * * * to any person * * * other than the named insured * * * does not apply * * * to any accident arising out of the operation * * * (of a) * * * service station * * *.

We know that White does maintain and operate a service station within the meaning of that term. Further, that in connection with the operation of that service station he does maintain for use therein the wrecker-with-boom vehicle. However, our concern here is:

> Whether White was at the time of the accident using the wrecker as an incident of his service station business and the accident injuring Emmert arose out of the operation of White's service station.

White urges that the term "service station" is broad and general in scope:

Webster's New International Dictionary, Second Edition

> "An establishment where service may be obtained for automobiles * * *."

Webster's Third New International Dictionary

> "A depot or place at which some service is offered."

and urges that it is common knowledge that some service stations will send out men and equipment to assist motorists in distress out on the road to change tires, to bring gasoline and equipment, etc. Without doubt, when White did send the wrecker boom vehicle on such a kindred mission he was extending an arm and a dragline as an incident of and in the operation of his service station.

Suffice here to point out that the loading of a log truck with sawlogs, whether in the "woods" or on the way from the "woods" to the mill is not an ordinary recognizable incident to or part of the operation of a service station and the accident causing the injury to Emmert arose out of the use of a vehicle sometimes used in White's service station business, but not out of the operation of White's service station. In no sense of the word was the trailer being "serviced" by White. Service, in the sense of an automotive service station, means "being supplied, fitted or stored." Here the trailer was, by the use of White's wrecker-with-boom vehicles, being stowed, not stored, or, simply, in the language of Amsterdam's policy, being "loaded" —that is, a ready-to-go vehicle being given a cargo, an operation specifically spelled out in the policy as being a use of the vehicle. Accordingly, the exclusion does not apply, as contended by Amsterdam.

It follows, and I conclude, that the plaintiffs are entitled to a declaration that White was an "insured" under the coverage of Amsterdam's policy while making use of his wrecker-with-boom vehicle to load Emmert's vehicles, and that as such Amsterdam is bound to enter upon the defense of White in the aforesaid State Court proceedings, but clothed with such policy defenses it may have.

I further conclude that it is expedient to segregate and reserve for later determination upon the application of either party the plaintiffs' contentions that:

(a) Amsterdam's policy provides the primary coverage, or, in the alternative,

(b) Amsterdam's and Pacific's policies provide concurrent coverage for White

on a pro rata basis in proportion to their respective policy limits.

Counsel for the plaintiffs may submit appropriate proposed findings, conclusions and judgment on the adjudicated contentions, with provision of segregation and reservation aforesaid, or may request a setting for hearing of the segregated and reserved issue and await final adjudication of the issues.