**McCLOSKEY AND COMPANY,**
Appellant,

v.

**ALLSTATE INSURANCE COMPANIES,**
a Corporation, Appellee.

**No. 19163.**

United States Court of Appeals
District of Columbia Circuit.

Argued Dec. 8, 1965.

Decided March 24, 1966.

Tamm, Circuit Judge, dissented.

Mr. John F. Mahoney, Jr., Washington, D. C., with whom Mr. Charles E. Pledger, Jr., Washington, D. C., was on the brief, for appellant.

Mr. Joseph S. McCarthy, Washington, D. C., for appellee.

Before BAZELON, Chief Judge, WRIGHT and TAMM, Circuit Judges.

BAZELON, Chief Judge:

McCloskey and Company, a general contractor, and Allstate Insurance Companies are contesting liability in this case for an injury suffered by one Mawyer on a construction project here in the District of Columbia. On the morning of December 19, 1962, a truck carrying steel reinforcing rods arrived at the construction site. Mawyer, a foreman for the subcontractor who was charged by contract with unloading the steel, informed a nearby crane operator of the arrival of the truck. The crane operator, who was employed by McCloskey, moved his crane to within 25 feet of the truck. In the meantime, Mawyer supervised several employees of the subcontractor in placing timbers on the ground to form a platform for the unloaded steel. When the crane was in position to unload the steel, these employees unhooked the clamshell bucket from one line of the crane and placed the bucket on the ground near the truck. A second line from the crane was left attached to the bucket. The crane operator then checked the boom of the crane for clearance from overhead wires. During this operation, and while Mawyer was still supervising the placement of the timbers on the ground, the

clamshell bucket fell on Mawyer and injured him.

Mawyer, joined by his wife, sued McCloskey for the alleged negligence of its employees. McCloskey then brought the present declaratory judgment action against Allstate. McCloskey claimed that the truck on the scene of the accident was owned by Joseph M. Dignan and Son, that the Dignan vehicle was insured under an automobile liability policy issued by Allstate, and that McCloskey was entitled to coverage as an additional insured under the unloading clause of the policy. After McCloskey had presented its evidence, the trial court sitting without a jury granted Allstate's motion for a directed verdict under Rule 41(b) of the Federal Rules of Civil Procedure. This appeal followed.

The trial court's first ground of decision was that McCloskey had failed to prove by a preponderance of the evidence that the truck involved in the accident was owned by Dignan. However, the trial court's memorandum opinion included the following findings of fact:

> Two loads of reinforcing steel rods were expected on the job site that day [December 19], but only one truck was there at the time of plaintiff Mawyer's accident.

> On December 18, 1962, the day before plaintiff Mawyer's accident, two loads of reinforcing steel rods * * * were delivered to * * * Dignan * * * marked for delivery at * * * [the job site in question]. These rods were delivered to the job site by Dignan trucks sometime on December 19 * * *.

The inescapable inference is that Dignan owned the truck. It follows that the trial court erred in finding otherwise.

The trial court also concluded that McCloskey had failed to show that unloading had begun within the meaning of the Allstate policy.[1] In reaching this conclusion, the trial court did not specify whether it was interpreting the "loading and unloading" clause of the policy according to the "coming to rest" or "complete operation" doctrines. Under the coming to rest doctrine, unloading

> comprises only the actual removing or lifting of the article from the motor vehicle up to the moment where (a) the goods which were taken off the automobile have actually come to rest and (b) every connection of the motor vehicle with the process of unloading has ceased.[2]

The complete operation rule, on the other hand, interprets the "loading and unloading" clause to include the

> entire process involved in the movement of goods from the moment when they are given into insured's [trucker's] possession until they are turned over at the place of destination to the party to whom delivery is to be made.[3]

So far as we are aware, the courts of this jurisdiction have not stated any preference between the two doctrines.[4] However, both parties agreed at oral argument that the complete operation doctrine should be applied to this case. Since this doctrine has been accepted by the majority of state jurisdictions, since it represents the probable intent of the parties, and since it is, in our opinion, the more reasonable interpretation of the

---

1. Specifically, the policy covered all claims arising out of the ownership, maintenance, or use of Dignan's vehicles, and use was defined as including the loading and unloading of the vehicles. Third parties were covered as additional insureds if they were legally responsible for the use of Dignan's vehicles and if that use was with Dignan's permission. Both parties have assumed throughout the litigation that McCloskey was legally responsible for the acts of its employees and that the use of the truck, if any, was permissive. Thus Allstate's liability for the purposes of this appeal turns on the question whether the accident "arose out of" the unloading of Dignan's vehicle.

2. Annot., 160 A.L.R. 1259, 1264 (1946).

3. Id. at 1267.

4. See Indemnity Ins. Co. v. Old Dominion Hoisting Service, 102 U.S.App.D.C. 141, 251 F.2d 382 (1958).

"loading and unloading" clause, we follow it.[5]

■ ■ Courts have formulated three subsidiary tests to determine if unloading has commenced within the meaning of the complete operation doctrine: (1) whether the acts which were in progress at the time of the accident were necessary and integral to the movement of goods from the vehicle; (2) whether these acts would have occurred "but for" the need to move the goods; (3) whether these acts were closely related in time and space to the actual movement of goods from the vehicle.[6] Here all the major preparatory acts prior to the movement of the steel, except attachment of a sling to the crane, were underway or completed when the accident occurred. Moreover, the testimony at trial indicated that none of these preparatory acts were begun, or could have been begun, before the truck arrived at the job site and that the location of the crane and the timber was dictated by the location of the parked truck. These facts, we think, satisfy the three subsidiary tests and establish that unloading had begun within the meaning of the Allstate policy.[7]

■ Allstate also contends that the accident was not causally related to the unloading process. Allstate's policy covered all injuries "arising out of" the unloading process, and we think this language was intended to articulate a more liberal concept of causation than that of proximate cause in its traditional legal sense. Both parties have litigated this case on the implicit premise that negligence in the handling or operation of the crane caused the accident to Mawyer. Assuming this to be so, the preparatory acts in this case were an efficient and predominating cause of the accident, the accident was closely related in time and space to the actual movement of the steel, and the injury would not have occurred but for the need to unload the steel. This constitutes a sufficient causal relationship to meet the standards of the policy. It is not necessary, in our view, that either the truck or its driver be actively involved in the causal chain before the accident can come within the scope of the policy.[8]

The case is therefore remanded so that Allstate may present its defenses, including any evidence it may have which negatives the conclusions that the truck was owned by Dignan, that the unloading process had begun, or that the injury

5. See, e.g., Allstate Ins. Co. v. Valdez, 190 F.Supp. 893, 894–895 (E.D.Mich.1961) ; State Auto. & Cas. Underwriters v. Casualty Underwriters, 266 Minn. 536, 124 N. W.2d 185 (1963); cases cited in note 6 infra; Annot., 160 A.L.R. 1259, 1267–72 (1946); Annot., 95 A.L.R.2d 1122, 1129–32, 1134–40 (1965); Risjord, Loading and Unloading, 13 VAND.L.REV. 903 (1960).

6. See, e.g., Lumbermens Mut. Cas. Co. v. Employers' Liab. Assur. Corp., 252 F.2d 463, 465–466 (1st Cir. 1958); Connecticut Indem. Co. v. Lee, 168 F.2d 420, 425 (1st Cir. 1948); St. Paul Mercury Ins. Co. v. Huitt, 215 F.Supp. 709, 714–715 (W.D.Mich.1963), modified, 336 F.2d 37 (6th Cir. 1964); Hardware Mut. Cas. Co. v. St. Paul Mercury Indem. Co., 264 Wis. 230, 58 N.W.2d 646 (1953).

7. Allstate argues that the "loading and unloading" clause does not apply because Mawyer's injury resulted from preparatory acts before the steel had started in motion. This argument, however, simply restates the coming to rest doctrine under which the unloading process is deemed not to have begun until the goods actually begin movement from the truck. It is settled that under the complete operation doctrine unloading does encompass preparatory operations prior to the physical movement of the goods. See, e.g., Connecticut Indem Co. v. Lee, supra note 6; State Auto. & Cas. Underwriters v. Casualty Underwriters, supra note 5; Hardware Mut. Cas. Co. v. St. Paul Mercury Indem. Co., supra note 6; Pellicano v. Royal Indem. Co., 35 Misc.2d 259, 229 N.Y.S.2d 654 (1962).

8. See, e.g., St. Paul Mercury Ins. Co. v. Huitt, supra note 6; Bituminous Cas. Corp. v. Travelers Ins. Co., 122 F.Supp. 197 (D.Minn.1954); State Auto. & Cas. Underwriters v. Casualty Underwriters, supra note 5; Wagman v. American Fidelity & Cas. Co., 304 N.Y. 490, 109 N.E. 2d 592 (1952); Brown & Risjord, Loading and Unloading; The Conflict Between Fortuitous Adversaries, 29 INS. COUNSEL J. 197, 202–05 (1962).

arose out of the unloading process.[9] We also caution that our holding on this appeal should not be understood to mean that Allstate's policy necessarily provides the only coverage in this case. Resolution of this issue, if it arises, must await full trial and the introduction into evidence of the relevant provisions of the Allstate policy and of any others that may be involved.[10]

Reversed and remanded.

TAMM, Circuit Judge, dissents.

9. See, *e.g.*, Moore-McCormack Lines, Inc. v. Maryland Cas. Co., 181 F.Supp. 854 (S.D.N.Y.1959); Gamble-Skogmo, Inc. v. St. Paul Mercury Indem. Co., 242 Minn. 91, 64 N.W.2d 380, 390–393 (1954); Brown & Risjord, *supra* note 8 at 215; Maga-

rick, *Loading and Unloading Under the Standard Automobile Policy*, 67 DICK. L.REV. 257, 269–72 (1963).

10. See, *e.g.*, Indemnity Ins. Co. v. Old Dominion Hoisting Service, *supra* note 4.