**FIREMAN'S FUND INSURANCE COM-
PANY et al., Plaintiffs-Appellees,**

v.

**CANAL INSURANCE COMPANY,
Defendant-Appellant.**

No. 26644.

United States Court of Appeals
Fifth Circuit.

May 6, 1969.

Robert G. Young, James E. Tribble, Blackwell, Walker & Gray, Miami, Fla., for appellant.

Richard J. Thornton, and John H. Wahl, Jr., Miami, Fla., for appellees, Walton Lantaff, Schroeder, Carson & Wahl, Miami, Fla., of counsel.

\* Of the Tenth Circuit, sitting by designation.

1. Hereinafter called Fireman's.

Before PHILLIPS,\* BELL and MORGAN, Circuit Judges.

ORIE L. PHILLIPS, Circuit Judge.

Fireman's Fund Insurance Company [1] brought this action against Canal Insurance Company,[2] seeking a declaratory judgment to determine the rights and obligations of each under policies of liability insurance, one of which was issued by Fireman's and one by Canal.

The facts are not in dispute.

On October 14, 1965, Canal issued its policy of automobile insurance to John W. Edwards. The policy provides, *inter alia*:

That Canal will "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages \* \* \* caused by accident and arising out of the ownership, \* \* \* or use of the automobile," which is described in the policy as a 1960 Diamond Model T Tractor, Motor Number 931CNO231, and a 1957 Trailmobile Semi-Trailer, Number 116711;

"III. *Definition of Insured*: (a) With respect to the insurance for bodily injury liability \* \* \* the unqualified word 'insured' includes the named insured \* \* \* and also includes any person while using the automobile \* \* \* provided the actual use of the automobile is by the named insured or \* \* \* with the permission of" the named insured;

That the "Use of the automobile \* \* \* includes the loading and unloading thereof."

On January 1, 1965, Fireman's issued to Hunter Ice & Fuel Company, Inc.,[3] its comprehensive liability policy, by which it agreed to "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, \* \* \* sustained by any person, caused by accident and arising out of the \* \* \* use of any automobile."

2. Hereinafter called Canal.

3. Hereinafter called Hunter.

Fireman's policy provided that "the insurance under this policy with respect to to loss arising out of \* \* \* the use of any non-owned automobile shall be excess insurance over any other valid and collectible insurance."

On November 2, 1965,[4] Edwards took his truck and semi-trailer, insured under Canal's policy, to Hunter's ice plant in Pahokee, Florida, to have Hunter ice down a load of vegetables loaded in the trailer.

Edwards backed the truck and trailer up to Hunter's loading platform and ordered 10 blocks of ice to be reduced to a form known as "snow ice" and spread upon the vegetables in his trailer.

The ice was run through a snow machine,[5] located on the loading platform, which reduced it from solid ice to snow ice and expelled the snow ice through an attached hose and nozzle onto the vegetables in the trailer. Hunter's employees moved 10 blocks of ice from its nearby ice storage room to its loading platform. They then ran the ice through the machine, one block at a time, and one of Hunter's employees held the hose and nozzle and sprayed the snow ice from the 10 blocks onto the vegetables in the trailer.

After the 10 blocks of ice were loaded, Edwards climbed upon the trailer, examined the load, and determined he needed two additional blocks of ice, which he ordered. One of Hunter's employees moved the two additional blocks of ice from the ice storage room to the loading platform.

At the time of that movement, Edwards was standing on the loading platform and dropped his fountain pen. It passed through an opening in the platform floor. Edwards went down from the platform and under it to retrieve his pen. While he was so doing, one of the two blocks of ice, which had been inserted into the machine by one of Hunter's employees, was passing through the machine, and another of Hunter's employees

was on the trailer and was spreading the snow ice, as it came from the machine onto the vegetables, by means of the hose and nozzle.

As Edwards was emerging from under the platform, one of Hunter's other employees started to move the second block of ice from a place on the platform near the machine to the machine, to be inserted therein. As it was being moved, that block of ice struck a metal strap on the floor of the platform, close to the machine, slipped off the platform and fell, striking one of Edward's legs and causing him serious bodily injuries.

Edwards brought an action against Hunter to recover damages for such bodily injuries, on the ground that they were caused by the negligence of Hunter's employees. Fireman's defended the action. Edwards recovered a judgment against Hunter on a jury verdict for $31,000 and costs.

On February 14, 1968, Fireman's, to satisfy such judgment, paid Edwards $25,404.39, which sum included $404.39 of taxable costs.

Thereafter, Fireman's paid counsel of record in the Edwards action attorneys' fees in the sum of $2,222.50. In addition, Fireman's expended nontaxable costs in defending the Edwards action of $548.58.

Thereafter, the instant case came on for trial, and the court awarded judgment in favor of Fireman's for $28,651.-53, the aggregate of the sums above set out which were expended by Fireman's, and interest on the $25,404.39 paid by Fireman's from February 14, 1968, at 6 per cent per annum.

The Canal policy provided that the words "use of an automobile" included "loading and unloading thereof."

In construing and applying the "loading and unloading" phrase in motor vehicle liability insurance policies, the courts in the majority of the states follow the more liberal "complete opera-

4. Both policies were then in full force and effect.

5. Hereinafter called the machine.

tions" rule.[6] Some states follow the "coming to rest" rule.[7]

The Canal policy was issued in Florida. We find no Florida decision adopting either rule.[8]

Absent the guidance of state court decisions, the federal courts have generally applied the "complete operations" rule.[9]

■ Believing the Florida courts will apply a liberal interpretation to the word "loading" and hold that it should be construed as covering all the steps that are an integral part of the complete operation of transferring the articles, goods, or other things to be conveyed, onto the insured vehicle, we shall undertake to lay down what we believe to be the applicable principles of law in the instant case, which are supported by decisions that follow the more liberal interpretation of the "loading and unloading" provision.

■ The terms "loading" and "unloading," as used in motor vehicle liability insurance policies, are not words of art. They are used to extend and expand the ordinary meaning of the word "use," and should be taken in their plain, ordinary and popular sense and given a meaning that will carry out the intent of the parties to the insurance contract.[10]

■ Where a motor vehicle insurance liability policy expands the ordinary meaning of the term "use" so that it includes the "loading and unloading" of the insured vehicle, and the policy provides coverage for "damages because of bodily injury * * * caused by accident and arising out of the * * * use of" the insured vehicle, a more liberal concept of causation is imparted than "proximate cause" in its traditional legal sense.[11]

■ If the accidental injury arises out of the loading of the insured vehicle, persons engaged in such loading operations were using the vehicle within the meaning of that phrase of the coverage provisions of such a policy.[12]

6. McCloskey & Co. v. Allstate Ins. Cos., 123 U.S.App.D.C. 177, 358 F.2d 544, 546, 547;
Spurlock v. Boyce-Harvey Machinery, Inc., La.App., 90 So.2d 417, 425;
August A. Busch & Co. of Massachusetts, Inc. v. Liberty Mut. Ins. Co., 339 Mass. 239, 158 N.E.2d 351, 353;
Allstate Ins. Co. v. Valdez, D.C.E.D. Mich., 190 F.Supp. 893, 895, and cases cited in note 2 on p. 895;
Drew Chem. Corp. v. American Fore Loyalty Group, 90 N.J.Super. 582, 218 A.2d 875, 878;
Cinq-Mars v. Travelers Ins. Co., R.I., 218 A.2d 467, 470; Wagman v. American Fidelity & Cas. Co., 304 N.Y. 490, 109 N.E.2d 592, 594;
Anno. 95 A.L.R.2d 1122, 1129.

7. Anno. 160 A.L.R. 1259, 1264–1267; Anno. 95 A.L.R.2d 1122, 1129.

8. See Rogers v. Continental Cas. Co., Fla.App., 155 So.2d 641, 644.

9. McCloskey & Co. v. Allstate Ins. Cos., 123 U.S.App.D.C. 177, 358 F.2d 544, 546;
St. Paul Mercury Ins. Co. v. Huitt, 6 Cir., 336 F.2d 37, 42;
Employers' Liability Assur. Corp. v. Indemnity Ins. Co., D.C.Md., 228 F.Supp. 896, 899;
Lumbermens Mut. Cas. Co. v. Employers' Liability Assur. Corp., 1 Cir., 252 F.2d 463, 465.

10. Lumbermens Mut. Cas. Co. v. Employers' Liability Assur. Corp., 1 Cir., 252 F.2d 463, 465, 466;
Ferry v. Protective Indemnity Co., 155 Pa.Super. 266, 38 A.2d 493, 494;
Maryland Cas. Co. v. New Jersey Manufacturing (Cas.) Co., 48 N.J.Super. 314, 137 A.2d 577, 581, aff'd 28 N.J. 17, 145 A.2d 15;
Anno. 160 ALR 1259, 1260–1263;
Anno. 95 ALR2d 1122, 1126–1128;
7 Appleman, Insurance Law & Practice, § 4322 (1942).

11. McCloskey & Co. v. Allstate Ins. Cos., 123 U.S.App.D.C. 177, 358 F.2d 544, 547.

12. Wagman v. American Fidelity & Cas. Co., 304 N.Y. 490, 109 N.E.2d 592, 594, 595;
Great Amer. Ins. Co. v. Gen. Acc. Fire & Life Assur. Corp., 5 Cir., 321 F.2d 948, 951, note 11;
Bituminous Cas. Corp. v. Travelers Ins. Co., D.C.Minn., 122 F.Supp. 197, 200;
Travelers Ins. Co. v. General Cas. Co., D.C.Idaho, 187 F.Supp. 234, 236.

**269**

Causal relationship between the accident and the use of the insured vehicle as a vehicle is not necessary.[13]

It is not necessary that either the insured vehicle, itself, or the driver thereof be involved in the accident.[14]

It is not necessary that the vehicle being loaded was itself the cause of the accident.[15]

It is sufficient if there is an immediate causal connection between the loading operation or the way it is carried out and the accident.[16]

Loading begins when the object to be loaded leaves its original location and starts toward the insured vehicle, to be placed therein.[17]

If the bodily injuries were caused by accident and resulted from the manner in which the party loading the insured vehicle carried out an essential part of the loading operations, that is, if they were caused by what he did or failed to do in carrying out an essential part of the loading operations, the party doing the loading was using the insured vehicle and is an unnamed insured within the coverage of the policy, if such use thereof was with the consent of the named insured.

There can be no doubt that at the time the accident happened, the Hunter employees were engaged in loading the truck with ice ordered by Edwards, and that Hunter was then a user of the truck under the provisions of the Canal policy. The crucial question presented, however, is whether the movement of the second of the two additional blocks of ice, from where it had been placed on the loading platform to fill Edwards's supplemental order, to the machine, was a part of the "loading" of the truck.

At least from the time the blocks of ice had been set apart to fill Edwards's supplemental order and placed on the loading platform near the machine, if not before, an integrated loading operation was being carried out by Hunter's employees. Every part and step of such operation was essential to the loading of the snow ice onto the trailer. Unless the blocks of ice set apart to fill Edwards's order and placed on the loading platform were moved to and through the machine, no reduction of that ice to snow ice and no loading thereof onto the trailer could have been effected. Hence, such movement was an essential part of the loading operation. Hunter's employees, acting in concert, were engaged in moving such blocks of ice, set apart to fill Edwards's order, from where they were placed on the loading platform to the machine, one block at a time, inserting each of them in the machine, reducing each to snow ice, and spraying the snow ice through the hose and nozzle onto the trailer.

We conclude that the movement of the last block of ice by a Hunter employee from its position on the platform toward

---

13. St. Paul Mercury Ins. Co. v. Huitt, 6 Cir., 336 F.2d 37, 43;
Bituminous Cas. Corp. v. Travelers Ins. Co., D.C.Minn., 122 F.Supp. 197, 200, 201.

14. McCloskey & Co. v. Allstate Ins. Cos., 123 U.S.App.D.C. 177, 358 F.2d 544, 547;
Bituminous Cas. Corp. v. Travelers Ins. Co., D.C.Minn., 122 F.Supp. 197, 200;
Spurlock v. Boyce-Harvey Machinery, Inc., La.App., 90 So.2d 417, 422;
Wagman v. American Fidelity & Cas. Co., 304 N.Y. 490, 109 N.E.2d 592, 595.

15. St. Paul Mercury Ins. Co. v. Huitt, 6 Cir., 336 F.2d 37, 43;

Bituminous Cas. Corp. v. Travelers Ins. Co., D.C.Minn., 122 F.Supp. 197, 201;
Spurlock v. Boyce-Harvey Machinery, Inc., La.App., 90 So.2d 417, 422.

16. Connecticut Indemnity Co. v. Lee, 1 Cir., 168 F.2d 420, 425;
Lumbermens Mut. Cas. Co. v. Employers' Liability Assur. Corp., 1 Cir., 252 F.2d 463, 465;
Employers' Liability Assur. Corp. v. Indemnity Ins. Co., D.C.Md., 228 F.Supp. 896, 900;
State Automobile & Cas. Underwriters v. Casualty Underwriters, Inc., 266 Minn. 536, 124 N.W.2d 185, 190.

17. St. Paul Mercury Ins. Co. v. Huitt, 6 Cir., 336 F.2d 37, 42;
Wagman v. American Fidelity & Cas. Co., 304 N.Y. 490, 109 N.E.2d 592, 594.

the machine, to be inserted in such machine, was an essential part of the loading of the truck in which Hunter, through its employees, was engaged, and that the block of ice slipped off the platform and struck Edwards because of the manner in which such employees were carrying out that part of the loading operation.

Since Hunter was loading the ice on Edwards's trailer at the request of Edwards and with his consent, Hunter was a user of the truck and trailer in carrying out such loading operations and was an unnamed insured under the provisions of the Canal policy.

We conclude that under the facts and applicable law, Edwards's bodily injuries were caused by accident and arose out of the use of the insured vehicle by Hunter in carrying out the loading operations.

Canal's insurance was clearly primary and Fireman's was excess, with respect to the damages suffered by Edwards.

Accordingly, the judgment is affirmed.