HERMAN WAGMAN, Respondent, *v.* AMERICAN FIDELITY & CASUALTY Co., INC., et al., Appellants, and BOND STORES, INCORPORATED, et al., Respondents.

Argued October 9, 1952; decided December 4, 1952.

*David Tepp* for appellants. I. The loading operation by Gilbert did not commence until its driver and helper on the truck lifted the garments from the racks at the curb. II. There was no loading of the automobile by Bond or its employees. (*B & D Motor Lines* v. *Citizens Cas. Co. of N. Y.*, 181 Misc. 985, 267 App. Div. 955; *Zurich Gen. Accident & Liability Ins. Co.* v. *Eagle Ind. Co.*, 279 App. Div. 574; *Krasilovsky Bros. Trucking Corp.* v. *Maryland Cas. Co.*, 54 N. Y. S. 2d 60; *Paterson Trucking Co.* v. *Liberty Mut. Ins. Co.*, N. Y. L. J., June 22, 1945, p. 2398.) III. The contract between the parties should be the controlling factor. IV. There was no permissive or contemplated use of the truck either directly or indirectly by respondent Wagman. V. Wagman was the employee of Bond and engaged in its business and not in the use of the vehicle.

*Harold M. Harkavy* and *Frederick M. Garfield* for Herman Wagman, respondent. At the time of the accident Wagman was engaged in " loading " the truck within the meaning of American's policy and hence was an insured entitled to protection under the policy. (*Pacific Automobile Ins. Co.* v. *Commercial Cas. Ins. Co.*, 108 Utah 500; *State* v. *District Ct. of Second Judicial Dist.*, 110 Mont. 250; *Zurich Gen. Accident & Liability Ins. Co.* v. *Eagle Ind. Co.*, 279 App. Div. 574.)

FULD, J. The issue here presented is whether a policy of automobile liability insurance issued by defendant-appellant American Fidelity & Casualty Co., Inc., to defendant-appellant Gilbert Carrier Corp., a motor carrier, affords coverage to plaintiff Wagman, an employee of one of Gilbert's customers, in connection with an accident which purportedly occurred during the loading of Gilbert's truck.

At the time of the accident, Gilbert's truck, parked at the curb in front of one of the stores of Bond Stores, Incorporated, on 42nd Street in New York City, was being loaded with garments on hangers from that store for transportation to Bond's warehouse in Rochester, New York. Two Bond employees, other

than plaintiff Wagman, the trial court found, rolled the garments out on moveable racks from the store to the curb line, and the driver of the truck reached down and lifted the garments into the truck, handing them to his helper, who arranged them with garments from other Bond stores inside the vehicle. Gilbert's men did not leave the truck during the loading, and none of Bond's employees entered the truck or brought the garments further than the curb line. Plaintiff Wagman, employed as a department manager in Bond's store, was engaged in counting and checking the clothes for inventory purposes and in supervising the pickup at the curb, but he did not participate in the actual pushing or carrying of the garments. On his way back to the store from the truck in order to check on some of the other goods to be shipped, Wagman bumped into a pedestrian, Mrs. Friederike Sladek, causing her to fall to the sidewalk and sustain serious injuries.

Mrs. Sladek brought suit against Wagman and Bond, and the latter, in its answer, asserted a cross claim against Wagman for judgment over against him as the party primarily liable. Wagman thereupon made demand on Gilbert's insurer, American Fidelity, to defend him against the Sladek complaint and the Bond cross complaint. Upon American's refusal, Wagman brought the present action for a declaratory judgment that he is entitled to protection from liability in connection with the Sladek action as an ''insured'' under the policy of insurance issued by American to Gilbert.

By that policy, American agreed to defend and indemnify '' the insured '' against claims for damages for accidental injury or death arising out of the ownership, maintenance or use of Gilbert's truck. An omnibus provision defined the term '' insured '' as including, not only the named insured, but also '' any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is with the permission of the named insured.'' The policy further provided that '' use of the automobile for the purposes stated includes the loading and unloading thereof.''

In concluding that there should be a judgment for plaintiff, the courts below found that he was engaged, at the time of the

accident, in an operation directly related to the process of loading the vehicle, that the loading constituted a " use " of the vehicle within the sense of the policy and that such use was with the permission of the named insured.

The interpretation of clauses such as those in Gilbert's policy, defining " use " of the insured automobile as including " loading and unloading ", has occasioned doctrinal division among the authorities. The narrower construction, adopted in some states, insists upon a close connection between the vehicle and the acts for which coverage is claimed. " Loading " is interpreted by the courts of those jurisdictions as including only the immediate act of placing the goods upon the vehicle — excluding the preliminary acts of bringing the goods to the vehicle; and " unloading " is taken to embrace only the operation of removing the goods from the vehicle to a place of rest. (See, e.g., *St. Paul Mercury Ind. Co.* v. *Standard Accident Ins. Co.*, 216 Minn. 103; *Stammer* v. *Kitzmiller*, 226 Wis. 348.) The broader construction, adopted in a majority of the jurisdictions which have passed upon the question, is that " loading and unloading " embrace, not only the immediate transference of the goods to or from the vehicle, but the " complete operation " of transporting the goods between the vehicle and the place from or to which they are being delivered. (See, e.g., *State ex rel. Butte Brewing Co.* v. *District Ct.*, 110 Mont. 250; *Bobier* v. *National Cas. Co.*, 143 Ohio St. 215; *Conrad* v. *Duffin*, 158 Pa. Superior Ct. 305; *Pacific Automobile Ins. Co.* v. *Commercial Cas. Ins. Co.*, 108 Utah 500; *London Guar. & Accident Co.* v. *White & Bros.*, 188 Va. 195.) The latter view impresses us as sounder, as more fully carrying out the aim of the policy — to cover the entire operation of making commercial pickups and deliveries in the business of the insured carrier — and, indeed, the courts in this state have already signified their approval of it. (See *Zurich Gen. Acc' 'ent & Liability Ins. Co.* v. *Eagle Ind. Co.*, 279 App. Div. 574, motion for leave to appeal denied 303 N. Y. 1016; *B & D Motor Lines* v. *Citizens Cas. Co. of N. Y.*, 181 Misc. 985, affd. 267 App. Div. 955; *Krasilovsky Bros. Trucking Corp.* v. *Maryland Cas. Co.*, 54 N. Y. S. 2d 60.)

Since, then, the policy is to be interpreted as covering the complete operation of making a pickup, the process — performed by Gilbert's employees — of placing the goods on the vehicle cannot be dissociated from the process — performed by Bond's employees — of taking the goods from the store to the curb line. Both operations together constituted the act of " loading " the vehicle.

If the entire operation had been performed by Gilbert's employees, and plaintiff had been employed by Gilbert instead of Bond, the evidence would unquestionably have warranted the trier of the facts in finding that his activities in supervising and checking the pickup of the garments had been part of the over-all process of loading the vehicle, even though he was not actually engaged in the physical effort of carrying the goods across the sidewalk to the curb line. That he was on his way back to the store at the time of the accident to supervise the bringing out of additional garments, would not suspend the coverage of the policy. (Cf. *Maryland Cas. Co.* v. *Tighe,* 29 F. Supp. 69, affd. 115 F. 2d 297.)

Nor may the insurer avoid liability under its policy because plaintiff was an employee of Bond rather than of Gilbert, in the light of the policy's omnibus provision defining the term " insured " as embracing any person using the vehicle with the permission of the named insured. The effect of that provision was to extend the coverage of the policy beyond the activities of the named insured and its employees. The only problem is whether plaintiff may be regarded as having been " using " the vehicle within the meaning of the policy. And the answer to that is clear. In *Zurich Gen. Accident & Liability Ins. Co.* v. *Eagle Ind. Co.* (*supra,* 279 App. Div. 574, motion for leave to appeal denied 303 N. Y. 1016), a policy similar to that in this case was held to afford coverage to a company other than the named insured which had hired the latter's truck and driver for the purpose of transporting a heavy vault door being dismantled by its employees. The policy was interpreted as protecting that company from liability in connection with an accident which occurred during the course of preliminary operations on the sidewalk prior to loading the vault door onto the

named insured's truck. The fact that no employee of the named insured was in any way involved in the accident, was held to have no effect on the question of coverage, since under the policy the term " insured " embraced persons other than the named insured who were using the vehicle with the latter's permission.

Likewise without consequence is the circumstance that the truck may not have been hired by Bond. Permissive use of a vehicle sufficient to qualify the user as an additional " insured " is not necessarily limited to actual operation of the vehicle. Such a restrictive interpretation would fail to give effect to the policy provision which defines " use " as including " loading and unloading ". Effectuation of the broad purpose of the policy to cover the entire process of making a commercial pickup or delivery, would seem to demand that the coverage of the policy be held to embrace loading and unloading operations performed by third persons with the permission of the named insured, although there is otherwise no actual or contemplated " use " of the vehicle by such third persons. Such third persons come squarely within the letter and the purpose of the omnibus definition of the term " insured ". (See, e.g., *Conrad* v. *Duffin, supra,* 158 Pa. Superior Ct. 305.)

Appellants, however, seek to base operative significance upon the provisions of a tariff schedule filed by Gilbert with the Interstate Commerce Commission in connection with its operations as an interstate motor carrier. That schedule fixed Gilbert's rates for deliveries of " garments and wearing apparel on hangers * * * between New York, N. Y., Jersey City and Newark, N. J. on the one hand, and Rochester and Buffalo, N. Y. on the other." It also provided that the rates therein fixed included " one pick-up from consignor's place of business," except that " No pick-up service will be provided in New York, New York, but carrier will accept shipments to any destination herein named, at its terminal." Pointing to the latter specification — permitting the carrier to accept shipments only at its terminal — appellants claim that the acts performed by Bond's employees can in no event be considered a " loading " operation under the policy; that those acts must

be regarded as akin to a consignor's transportation of goods by its own facilities to the carrier's terminal for loading by the carrier at that point, and, for that reason, outside of the policy's coverage. If there were a duly promulgated regulation of the Interstate Commerce Commission clearly applicable here, forbidding pickups at the consignor's place of business, a contention could perhaps be made that the policy was written in contemplation of the carrier's compliance with that regulation and that the insurer could not be taken to have intended to assume liability for loading operations in violation of the regulation. We do not, however, reach that question in this case. For all that appears in the record before us, the shipment that Bond was making from its store in New York City to Rochester, New York, being made from one point within the state to another, may have been purely intrastate. And, if that was so, if the shipment was of an intrastate rather than an interstate character, it would appear to be subject, not to control by the Interstate Commerce Commission, but to regulation by the Public Service Commission of this state. (Cf. *B. & O. S. W. R. R. Co.* v. *Settle,* 260 U. S. 166; *Groendyke Transp. Extension-Etter,* 9 Fed. Carr. Cas., pars. 32, 424; *Earle* v. *Brink's Inc.,* 54 F. Supp. 676; *Tucker* v. *Casualty Reciprocal Exch.,* 40 F. Supp. 383.)

As a matter of fact, appellants do not actually contend that the shipment in this case was of an interstate nature; they point merely to the circumstance that the rate which Gilbert charged Bond for the shipment was the same as that fixed in the tariff schedule for interstate shipments. The record does not, however, show that equivalent rates would not be available for an intrastate shipment or that pickups at the consignor's place of business would be prohibited for such intrastate shipment under pertinent regulations of the Public Service Commission. Moreover, if, as appellants seem to assume, the regulations of the Interstate Commerce Commission do not bar the carrier from receiving the consigned goods in its vehicle at the curb in front of the consignor's place of business, it is questionable whether the consignor's acts in carrying the goods from the store to the vehicle must as a matter of law be

denied effect as part of the over-all operation of loading the vehicle. In any event, the burden rests upon appellants to establish, not only the applicability of the regulations on which they rely, but their violation as well, and, since the record falls short of establishing either the one or the other, we need not determine what effect the regulations would have if they were shown to be here controlling.

The judgment should be affirmed, with costs to plaintiff-respondent against defendants-appellants.

FROESSEL, J. (dissenting). The issue before us is aptly stated in the prevailing opinion. Assuming that we are inclined in this State toward the " complete operation " theory in determining what constitutes the loading of a vehicle, these words are not a formula that embraces everything that may have been done prior to the immediate effort of loading. The line of demarcation must be reasonably drawn. As the trial court said in *Zurich Gen. Accident & Liability Ins. Co.* v. *Eagle Ind. Co.* (unreported, affd. 279 App. Div. 574, motion for leave to appeal denied 303 N. Y. 1016), it is a " question of degree." There, a safe door was but thirty-six inches away from the truck and the insured truck had actually been hired by the shipper.

The " immediate effort " of loading may encompass the movement of goods from the premises of the shipper, where they have been made ready for shipment, to or upon the carrier's vehicle. In the case at bar, however, for reasons considered by them to be good and sufficient, and obviously dictated by the tariff schedule filed by the motor carrier with the Interstate Commerce Commission, the parties agreed to and carried out a different arrangement. The carrier did not pick up goods from the premises, but, instead, its employees deliberately refrained from leaving the truck, and picked up the merchandise from the curb in front of the premises, pursuant to the aforementioned agreement. Plaintiff took no part in the loading of the truck, but merely counted and checked the garments for inventory purposes as they were brought out from the store to the curb, at which latter point they were made ready for pickup and shipment. This too was in pursuance of his employer's agreement with the carrier. Plaintiff was thus

carrying out a duty to his employer which would ordinarily be performed inside the store and might well have been done hours, or an entire day, before; the risk to pedestrians thus created — and here resulting in injury — was not one which accompanied this loading, and was therefore not one which would be within the contemplation of the insurer and the carrier in entering into the insuring agreement.

In the light of these considerations, it is my conclusion that plaintiff was not engaged in loading the vehicle when the accident occurred. In the circumstances disclosed by this record, the loading was limited by the prior agreement of the carrier and shipper to the operation of removing the goods from the sidewalk at the curb to the truck, and this was concededly accomplished by the employees of the carrier. Plaintiff's activities on the public sidewalk on behalf of his employer therefore cannot reasonably be said to have been part of the loading operation. It follows that he was not " using " the truck " with the permission of the named insured " or otherwise.

The judgment appealed from should be reversed, and the complaint dismissed, with costs against plaintiff-respondent.

LOUGHRAN, Ch. J., LEWIS, CONWAY, DESMOND and DYE, JJ., concur with FULD, J.; FROESSEL, J., dissents in opinion.

Judgment affirmed.