Harold Tessler, J.
This case was tried pursuant to a written stipulation specifying which allegations of the complaint are admitted as to facts therein alleged and that the examinations before trial referred to in paragraph “ 6 ” of said stipulation “ shall be deemed to be admitted in evidence and shall be deemed testimony taken at this trial.”
Athan Rapton, an accountant, arrived at the store, in which the plaintiff Vlamis operated a bar and grill, at about 8:00 a.m. of June 5,1954, to check his books. The only person then in the premises was the bartender Victor Colon, who was standing behind an opening midway in the bar. A flap when in place over this opening formed part of the top of the bar. At this time, however, this flap was raised, thus creating an opening between the two sections of the bar.
Rapton left his brief case and newspaper in one of the booths and went over to the bartender who had extended his hand in greeting from behind the bar across this opening. As Rapton grasped the proffered hand, he stepped forward and fell into an opening in the floor behind the bar at the point where it was divided by the flap, which opening led to the cellar. As he fell, he retained his grip on the bartender’s hand and thus was prevented from falling completely through the opening. His right arm, however, was fractured as it came in contact with one of the steps leading to the cellar.
It appears that shortly prior to this accident one Frank Reysen, employed as a chauffeur by the defendant Liebmann Breweries, Inc. (hereinafter called “Liebmann”), arrived at the premises to deliver two barrels of beer. He testified as follows: “1 had to go in the store and go down the trapdoor and open up the lock that locked the sidewalk doors. And my helper opened up — my helper opened the cellar doors and then we took the beer off the truck, and.he handed them down to me. Then I locked the cellar doors again underneath and went out the trapdoor again behind the bar.”
No key was required to open the trap door. A key, however, was necessary to open the outside cellar doors and it was given *840 to the chauffeur -by the bartender who, according to the practice on prior deliveries, opened the trap door. Then the chauffeur wTent down the stairway leading to the cellar, turned on the light switch and proceeded in the cellar to the sidewalk doors to unlock them from the inside to permit the beer barrels to be handed down to him by his helper. The chauffeur then placed the barrels in the refrigerator located in the rear of the cellar some 15 feet from the steps leading to the trap door. This accomplished,. he ascended the stairway to permit him to get back to and then out of the store. It was then ‘ ‘ when I finished making the delivery, on the way up, that’s the first time I knew that there was an accident.”
Bapton sued Liebmann and Vlamis for the personal injuries sustained, as aforesaid, alleging that the accident was due to his falling through an open trap door in the premises of Vlamis; that said trap door had been opened in order to effect the delivery of certain goods by Liebmann to Vlamis, and that the trap door was opened during the course of said delivery which encompassed the loading and unloading of a motor vehicle owned, operated, managed and controlled by Liebmann,
Subsequent to the commencement of the aforesaid action, Vlamis and his insurance carrier, the plaintiff Cosmopolitan Mutual Insurance Company (hereinafter called “ Cosmopolitan ”), made a demand upon Liebmann and its insurance carrier, the defendant Interboro Mutual Indemnity Insurance Company (hereinafter called “ Interboro ”) that it agree that it stood in the position of coinsurer with Cosmopolitan as to Vlamis and that said Interboro, as such coinsurer, agree to pay its proportionate share of any expenses involved in the defense of said action against Vlamis and to pay any judgment rendered against him in the same proportion. Upon failure to so agree, Cosmopolitan and Vlamis brought this action against Liebmann and Interboro for judgment declaring that said defendants are coinsurers of the plaintiff Vlamis on a prorata basis by reason of the loading and unloading provision of the automobile liability policy issued to Liebmann by Interboro. The gravamen of this complaint is that the accident at Vlamis’ bar and grill, as aforesaid, as a result of which Bapton seeks to recover damages for personal injuries, occurred under circumstances which entitle Vlamis to liability coverage as an insured under the omnibus clause in the Liebmann policy.
It is conceded that the contract of insurance between the defendants Interboro and Liebmann was entered into, executed and delivered in this State and that coverage thereunder was and is to be determined, governed and interpreted by the laws *841 of this State; also that the premium paid was based upon the particular rates applying to motor vehicles operating to and from this State. It was also agreed that pursuant to said contract of insurance, Inter-boro “ agreed to defend and indemnify ‘ the insured ’ against claims or damages for accidental injury arising out of the ownership, maintenance and use of the aforesaid motor vehicle of the defendant ‘ liebmann ’ and defined the term ‘ insurance ’ as including not only the named insured, but also any person while using the said automobile or any person or organization legally responsible for the use thereof provided the actual use of the automobile is with the permission of the named insured, and that use of the automobile for the purposes stated includes the loading and unloading thereof.”
The clause contained in the Liebmann policy, defining the 11 use ” of its truck as including “ loading and unloading ”, has been construed differently in the jurisdictions that have had occasion to pass upon it. The States adopting the narrower construction interpret “ loading ” as “ including only the immediate act of placing the goods upon the vehicle — excluding the preliminary acts of bringing the goods to the vehicle; and ‘ unloading ’ is taken to embrace only the operation of removing the goods from the vehicle to a place of rest.” (Wagman v. American Fid. & Cas. Co., 304 N. Y. 490, 494.) The broader construction of the majority of States, and adopted as the sounder of the two by our Court of Appeals, is “ that 1 loading and unloading ’ embrace, not only the immediate transference of the goods to or from the vehicle, but the ‘ complete operation ’ of transporting the goods between the vehicle and the place from or to which they are being delivered.” (id.)
In Wagman a New York City clothing store (Bond) wished to ship garments to its warehouse in Rochester. The truck of a motor carrier (Gilbert) hired to do this was parked at the curb of the clothing store while two of its employees rolled the garments out on movable racks to the curb line and no further. The carrier’s truck driver and helper would then, without leaving the truck, reach down and lift the garments into the truck. While a supervisory employee of Bond was on his way back from the curb to the store in order to check on some more goods to be shipped, he collided with a pedestrian, causing her to fall to the sidewalk, thereby sustaining injuries. She sued him and the store which cross-claimed for judgment over against such employee. The latter thereupon brought an action against the carrier, its insurer, Bond, the store, and the pedestrian for judgment declaring that he was entitled to indemnification for any liability arising out of the pedestrian’s action as an *842 “ insured ” under the policy of insurance issued to the carrier whose truck was being loaded as described above.
In analyzing this accident, in light of the omnibus clause contained in the policy, Judge Fuld, writing for the court, held that the process performed by the carrier’s employees “ of placing the goods on the vehicle cannot be dissociated from the process—performed by * * * [the store’s] employees — of taking the goods from the store to the curb line. Both operations together constituted the act of 1 loading ’ the vehicle. ’ ’ (304 N. Y. 495.)
The decision in the case at bar turns upon what constituted the ‘1 unloading ’ ’ of the two barrels of beer and whether the accident involved occurred before the “unloading” operation was completed. In B & D Motor Lines v. Citizens Cas. Co. of New York (181 Misc. 985, affd. 267 App. Div. 955), and cited in the Wagman case (supra), the plaintiff, who was inside a building in which the insured’s consignee was located, was struck by a jigger in the custody of the insured’s employees who were then transporting cartons from his truck to the consignee. In holding that the accident occurred while the truck was being unloaded, the court stated (181 Misc. 985, 987): “ The accident occurred before delivery was complete, before the goods had come to rest in the premises of the consignee, even before they had reached those premises, although they were already inside the building in which the consignee was located.” (Emphasis supplied.)
The same conclusion, that a delivery is complete when the commodity has come to rest in the place where it was intended to be delivered, was reached in several cases in other jurisdictions. Thus in Liberty Mut. Ins. Co. v. Hartford Acc. Ind. Co. (251 F. 2d 761) empty or nearly empty paint and lacquer cans were unloaded from the insured’s truck onto a burning city flump; 29 hours later a blaze in such dump reached these cans causing an explosion which injured a minor. The court held that such injury was not within the coverage of the liability policy covering the truck, since the cans had been finally and completely delivered and no further action as to them was contemplated. The court noted at page 764: “ The cans had been finally and completely delivered. No further action as to the cans was contemplated. * * * Even under the broadest interpretation, the unloading of the truck had been completed. ’ ’
In State ex rel. Butte Brewing Co. v. District Ct. (110 Mont. 250) a pedestrian was injured when he fell through a cellar door which was open to allow the delivery of a barrel of beer. At the time the injury occurred the barrel of beer was upon the *843 sidewalk. In holding that the unloading process was still in operation when the accident occurred, the court stated (p. 256) that the unloading of the barrel of beer ‘ ‘ embraced the continuous act of placing the commodities where they were intended to bq actually delivered”. (Emphasis supplied.) (See, also,Pacific Auto. Ins. Co. v. Commercial Cas. Ins. Co., 108 Utah 500.)
Applying the rationale of the foregoing decisions to the facts at bar, this court is of the opinion that the “ unloading ” operation here continued until the two barrels of beer were placed by Liebmann’s driver in the cellar refrigerator. Liebmann’s driver himself testified that ‘‘ when I finished making the delivery, on the way up, that’s the first time I knew that there was an accident.”
The crucial question is whether the accident occurred before such delivery was completed, as was the situation in Wagman. On that issue the proof is hazy and counsel were unable, subsequent to the submission, to stipulate to definitive facts. All we know is that a delivery such as this normally took from 10 to 15 minutes and that on this particular occasion the injured accountant arrived in the premises after the driver had descended through the trap door. It was when the driver was on his way up the stairway, following the placing of the barrels in the refrigerator, that he first saw the injured accountant lying on the stairway. The accountant testified that as he fell through the trap door the bartender’s grip on his hand kept him from falling down completely. In that connection he testified as follows:
“ Q. Did he stop you from falling completely? A. That’s right. Otherwise I would have fallen all the way down.
“ Q. What happened to you when you. fell partially into the hole? A. He was still holding my hand, and he was—he pulled me out, but when I fell down I hit the side of the stairs. * * *
“ Q. Was the bartender trying to pull you out of the hole? A. That’s right. He gave me his hand.”
The driver testified that he “ helped the bartender carry him [the accountant] the rest of the way up the stairs and took him over to a booth and sat him down.”
Since the bartender retained his grip of the accountant’s hand during the entire course of this accident, and the latter was immediately “ pulled out of the hole,” and to a booth with the help of the driver, it may reasonably be inferred that the accident occurred after the two barrels of beer had been placed in the refrigerator, and thus after the unloading operation was completed. Of course, inference is never certainty but it may be plain enough to justify a finding of fact. (Tortora *844 v. State of New York, 269 N. Y. 167, 170; Allen v. Stokes, 260 App. Div. 600.) Such is the- situation here.
Accordingly, judgment without costs is granted in favor of the defendants dismissing the plaintiffs’ complaint on the merits. This constitutes the decision of the court pursuant to section 440 of the Civil Practice Act.