OPINION OF THE COURT
Rudolph U. Johnson, J.
This matter was initiated by defendant’s notice of motion for summary judgment requesting an order dismissing the plaintiff’s complaint and directing summary judgment in favor of the defendant. The plaintiff in its answering affidavit requests similar relief.
The underlying cause of action is a suit commenced by the plaintiff on October 25, 1978 for declaratory judgment seeking *950 the defense of, and if need be, indemnification for any liablity found against plaintiff resulting from a personal injury action instituted by one William Bornt against plaintiffs insured, County Asphalt. Plaintiff bases its demand on that part of defendant’s insurance policy which provides coverage for an insured vehicle for any bodily injury arising out of the "loading or unloading” of said vehicle during its use by the owner or lessee or borrower thereof!
The basic facts are undisputed.
On October 9, 1974, County Asphalt was reconditioning a portion of the New York State Thruway, by installing underground drain tile along the shoulder of the westerly lane of travel and were in the process of removing soil from under this drainwork. The soil was being removed by County Asphalt employees and was hauled away by dump trucks provided by Bondale Construction Company. Bondale, being short on dump trucks, had further contracted with Floyd Bornt to provide the truck in question as well as an operator (plaintiff, William Bornt). The truck and operator, however, were paid for by the hour by County Asphalt. The Bornt truck was one of many dump trucks used to carry soil from the work site to a deposit area some distance east of the work site.
After being loaded by County Asphalt employees, the dump trucks would travel west along the Thruway in a "dead lane” approximately one-quarter mile where a County Asphalt flagman would direct the trucks onto a crossover in the Thruway’s dividing median. The trucks would, therefore, cross not only the median areas, but also the remaining "live” westerly lane. Having been waved across, the trucks would then proceed, without further direction, easterly past the work site to a deposit area.
Plaintiff, Bornt, claims that at the time of the accident he was following the signal of the flagman and was waved into the path of an oncoming vehicle, with resulting injuries.
The defendant herein denies that it should afford coverage to plaintiffs insured pursuant to the loading or unloading provisions of its policy and maintains that the loading of the truck had been completed, that unloading had not yet commenced, and that the truck was merely in transit to the dump site. As such the loading and unloading provision is inapplicable.
The plaintiff, however, in heavy reliance on Kozdranski Co. v Jamestown Mut. Ins. Co. (40 AD2d 187, affd 34 NY2d 542) *951 contests defendant’s motion and argues that the Bornt truck was, in effect, being leased by County Asphalt, was following the directives of County Asphalt, and that at the time of the accident was still within the loading site, and, therefore, still in the process of loading as defined in the "complete operation” rule established in Wagman v American Fid. & Cas. Co. (304 NY 490).
In Kozdranski, the Appellate Division was reviewing a policy of insurance with nearly identical language as that present here, as well as a similar fact situation, in that a dump truck was being loaded by a backhoe with sludge from a digging site.
The issues to be decided by this court are then whether the one-quarter mile "dead lane” is to be construed as part of of the job site proper; if so, then was the Bornt dump truck being loaded within the meaning of the "completed operations” doctrine and again, if so, was the dump truck being "used” within the meaning of the defendant’s policy.
The court finds that the facts clearly show that the "dead lane” constituted part of the job site. However, the court does not believe that the "complete operations” rule is meant to include the facts before us and is otherwise distinguishable from the Kozdranski decision.
In Wagman, the Court of Appeals clearly enunciated that > the term "loading and unloading” embraced the complete operation of transporting the goods between the vehicle and the place from which they are being delivered or between the vehicle and the place to which they are being delivered. (304 NY, at p 494.)
In the case at hand the Bornt dump truck had already received its full load at the digging site, the soil had come to rest in the dump truck which had then been driven one-quarter mile away where the accident occurred.
We think it an important distinction that in all the reported decisions applying this doctrine and reviewed by this court, that the accidents therein occurred as a result of some act directly related to the physical process of loading or unloading. The offending parties there were merely the conduits for goods passing from the delivery site to the vehicle or between the vehicle to the delivery site. (See, e.g., Lamberti v Anaco Equip. Corp., 16 AD2d 121; Traverlers Ins. Co. v Saunders & Sons, 18 AD2d 126; Hertz Corp. v Beilin, 28 AD2d 1101.)
*952 Here the Bornt dump truck was already underway with a full load.
While this court is mindful of the decision in Pellicano v Royal Ind. Co. (35 Misc 2d 259, 261), wherein the court stated: "Since loading is defined to cover the 'entire operation of making commercial pickups and deliveries’ we are of the opinion that a broad interpretation of the language is required as a matter of law, and that the operation of 'unloading’ commenced with the arrival of the truck upon the job site” (citing cases; emphasis added), we do not believe that the case authority cited supports that finding. On the contrary, it is our opinion that the Court of Appeals in setting forth the "complete operations” doctrine did not intend that it be so broadly interpreted as to include acts occurring outside of the physical loading and unloading process, such as traveling between locations.
Here the soil had been dug and had come to rest within the body of the dump truck which then began its trip toward the unloading area. That it was still within the work site is unrelated to the act of loading as defined in Wagman and as intended by defendant’s policy of insurance.
This being the case the court need not reach the question of "use” which, in any event, appears to have been settled by the Kozdranski decision.
Lastly, we note that plaintiff’s argument that the "use” of the Bornt vehicle through the exercise of directive control by County Asphalt’s flagman is within the definition of persons insured in defendant’s policy, was not pleaded in the underlying complaint and is not, therefore, properly before us on these motions for summary judgment.
Defendant’s motion for summary judgment is granted and the defendant is directed to submit an order in accordance with this decision.