OPINION OF THE COURT
Thomas W. Keegan, J.
Plaintiff moves this court for an order granting summary judgment, pursuant to CPLR 3212, in this action for first-party benefits claimed to be due him under a policy issued by the defendant in accordance with article 51 of the Insurance Law, commonly known as the "No-Fault” Law. Defendant cross-moves for summary judgment, seeking dismissal of the plaintiff’s claim.
On January 2, 1993, plaintiff was operating a tractor-trailer owned by Crowley Foods, Inc. in the course of his employment with Crowley Foods. Plaintiff was delivering dairy products to the Grand Union store in Niskayuna, New York. Upon arrival, plaintiff parked his truck adjacent to the Grand Union’s loading dock, got out of the truck and opened the rear cargo door. He then stepped onto the store’s levelator. The levelator is constructed and operated so that its metal plates can be connected to the rear of a delivery truck to allow for the placement of goods and then lowered to the ground so that the goods can be moved into the store. After obtaining the necessary control devices, plaintiff brought the levelator to the same height as the rear of the tractor-trailer, and moved the dairy products from the tractor-trailer onto the levelator. As plaintiff was standing on the levelator, a plate broke or malfunctioned, tipping the levelator. Plaintiff fell to the ground and suffered a serious injury.
In addition to filing suit against the Grand Union Company for negligently maintaining the levelator, plaintiff filed a no-fault application with defendant insurer on February 9, 1993. On February 17, 1993, defendant sent plaintiff a partial denial of a claim notice because plaintiff was eligible for workers’ compensation. Defendant also informed plaintiff that they would determine whether he was entitled to any additional no-fault benefits.
On June 3, 1993, plaintiff received notice of denial for the following reason: "The insured vehicle was not the actual instrument which caused the injury to William Walton. The accident did not arise out of the inherent nature of the truck. *562 The truck did not contribute to cause a condition which resulted in the injury to William Walton. Therefore, No-Fault benefits are hereby denied.”
Plaintiff then brought this action, seeking no-fault benefits on two grounds. First, that the plaintiff was engaged in the "loading and unloading” of the vehicle at the time of the levelator malfunction so as to come within the provisions of New York’s No-Fault Law (Insurance Law § 5103 [a] [1]) providing first-party benefits for "basic economic loss on account of personal injury arising out of the use or operation of [such] motor vehicle.” (Insurance Law § 5102 [b].) Second, that the defendant failed to give timely notice of its denial pursuant to Insurance Law § 3420 (d), and thus, was precluded from denying the claim for first-party benefits. The court finds both arguments unavailing.
Plaintiff contends that he is entitled to first-party benefits because his situation falls within a "use” as contemplated by Insurance Law § 5103 (a) (1). This section provides for first-party benefits to persons, other than occupants of another motor vehicle or a motorcycle, for losses arising out of the use or operation in this State of such motor vehicle. "Use or operation,” pursuant to 11 NYCRR 65.12 (e), has been defined to include the loading or unloading of such vehicle. Plaintiff, relying on Wagman v American Fid. & Cas. Co. (304 NY 490), argues that liability coverage during the loading and unloading of such vehicle includes "not only the immediate transference of the goods to and from the vehicle, but the 'complete operation’ of transporting the goods between the vehicle and the place from or to which they are being delivered.” (Supra, at 494.)
Defendant, on the other hand, argues that the Wagman rule is inapplicable and that the test announced in Matter of Manhattan & Bronx Surface Tr. Operating Auth. (Gholson) (71 AD2d 1004) is the appropriate one to employ. In Gholson, the Second Department set forth three rules to determine the liability of an insurer under a standard automobile policy. These rules are that: " ' "1. The accident must have arisen out of the inherent nature of the automobile, as such; 2. The accident must have arisen within the natural territorial limits of an automobile, and the accidental use, loading, or unloading must not have terminated; 3. The automobile must not merely contribute to cause the condition which produces the injury, but must, itself, produce the injury” ’.” (Supra, at 1005.)
*563 In few instances have the Wagman and Gholson rules come into conflict, but when they have, the rule applied has been the Wagman rule. (See, Kessler v Liberty Mut. Ins. Co., 158 AD2d 974.) In Kessler, in deciding whether a plaintiff injured while loading bales of hay onto a flatbed truck was entitled to first-party benefits, the lower court (142 Misc 2d 1078) applied the Gholson test to deny plaintiff such benefits. The Appellate Division, Fourth Department, without commenting on the Gholson test, modified the decision and granted the plaintiff first-party benefits, using the Wagman test to arrive at the decision that plaintiff was "using” his vehicle at the time of the accident.
In Matter of Owens (Northwestern Natl. Ins. Co.) (116 AD2d 784), a barrel being loaded from a loading dock onto a truck slipped and injured the driver, the Third Department stated that the master arbitrator’s decision that the driver was not engaged in the use or operation of the truck when loading the barrel was "indeed debatable” (at 785), but ultimately found his determination rational, without condemning or condoning his application of the Gholson test.
In any event, there is an important point to be made, it is not sufficient for the plaintiff merely to show that the accident occurred during the time period covered by the loading and unloading, as plaintiff tries to show here. For "loading and unloading” coverage to extend, the facts must demonstrate that the injury resulted from some act or omission of the insured which was related to that process. (Cosmopolitan Mut. Ins. Co. v Baltimore & Ohio R. R. Co., 18 AD2d 460; Employers Mut. Liab. Ins. Co. v Aetna Cas. & Sur. Co., 7 AD2d 853.)
Here, the injury was not a result of an act or omission by the insured. (See, Utica Mut. Ins. Co. v Prudential Prop. & Cas. Ins. Co., 103 AD2d 60, 62, affd 64 NY2d 1049.) The injury resulted from the malfunctioning levelator. Plaintiff’s acts in the unloading process did not contribute to a condition to cause the accident. Thus, first-party benefits were properly denied by the insurance company, though for a different reason than argued.
In turning to plaintiff’s second claim, that defendant’s delay in denying first-party benefits constituted loches, the court notes that the insurance company is not subject to the timely disclaimer provisions contained in Insurance Law § 3420 (d) where no coverage existed under the policy. (Matter of State Farm Mut. Auto. Ins. Co. [Merrill], 192 AD2d 824, *564 825.) Simply put, "the failure to disclaim coverage does not create coverage which the policy was not written to provide.” (Zappone v Home Ins. Co., 55 NY2d 131, 134.) Therefore, because this court has determined that the policy in question was not written to cover plaintiffs situation, the time it took to render a disclaimer does not give plaintiff a basis to receive first-party benefits.
Accordingly, plaintiffs motion for summary judgment is denied and defendant’s cross motion for summary judgment is granted.