

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-4-1996

# Assicurazioni Generali v. Public Svc. Mut. Ins. Co.

Precedential or Non-Precedential:

Docket 95-1479

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

## Recommended Citation

"Assicurazioni Generali v. Public Svc. Mut. Ins. Co." (1996). *1996 Decisions*. Paper 208.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/208

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

NO. 95-1479
_____


ASSICURAZIONI GENERALI, S.P.A.,
                              Appellee,

                  v.

PUBLIC SERVICE MUTUAL INSURANCE COMPANY a/k/a/ PSM; MARKETING
INDUSTRIES GROUP, LTD., FORMERLY KNOWN AS SERVICE FURNITURE
  DELIVERY, INC.; BLOOMINGDALE'S INC.; WILLIE WIGGINS,

           Public Service Mutual Insurance Company,
           a/k/a PSM,

                  Appellant

                _____


        Appeal from the United States District Court
           for the Eastern District of Pennsylvania
                  D.C. No.  94-cv-06054
           District Judge:  Honorable Marvin Katz

                _____


          Argued December 8, 1995

     Before:  STAPLETON, SAROKIN, and ROSENN, <u>Circuit Judges</u>
                _____


            (Filed  March 4, 1996)


Bernard E.J. Quinn (argued)
German, Gallagher & Murtagh
200 South Broad Street, 5th Floor
Philadelphia, PA  19102
Counsel for Appellee


Michael J. Cawley (argued)
Eileen C. McGinley
Margolis, Edelstein & Scherlis
Sixth & Walnut Streets

The Curtis Center, 4th Floor
Philadelphia, PA 19106
Counsel for Appellants

---

---

ROSENN, <u>Circuit Judge.</u>

The appeal in this declaratory judgment diversity action raises a question of insurance policy interpretation whether one or both insurance companies are obligated to defend an action for injuries sustained at the hands of their insured. On June 30, 1994, an elevator operator filed suit in state court against Marketing Industries Group, Ltd. ("MIG") and Bloomingdale's, Inc. for injuries he sustained when a bed frame fell on his foot in the course of a delivery by MIG on behalf of the vendor, Bloomingdale's. Assicurazioni Generali, S.p.A. ("Generali") provided vehicle liability coverage to MIG, a delivery company. Public Service Mutual Insurance Company ("PSM") provided MIG with a general liability policy. Generali brought a declaratory judgment action in the United States District Court for the Eastern District of Pennsylvania,[1] requesting the court to hold PSM obligated to defend and indemnify MIG in the underlying tort action, and to find that

---

[1] Marketing Industries Group, Ltd., Bloomingdale's, Inc., and Willie Wiggins were parties to the action. These parties did not appeal the district court's order.

2

Generali's policy did not obligate Generali to defend MIG in the tort suit.[2]

The district court found that the Generali and PSM insurance policies provided concurrent coverage to MIG for the pending tort litigation.[3] PSM timely appealed the court's order to the extent that it obligated PSM to defend MIG in the underlying suit. Generali did not appeal the court's order. We reverse the judgment of the district court insofar as it obligated PSM to defend MIG in the underlying tort action.

I.

On July 23, 1992, MIG deliverymen delivered a bed, purchased at Bloomingdale's, Inc., to a condominium building in Philadelphia, Pennsylvania. The deliverymen transported the bed, via the freight elevator, to the purchaser's apartment on the 19th floor of the building. As the MIG deliverymen moved the bed from the elevator into the 19th floor hallway, the bedframe fell on the foot of Willie Wiggins, the elevator operator. Wiggins sued MIG and Bloomingdale's alleging that MIG employees negligently caused the bed frame to fall on Wiggins's foot, resulting in severe and permanent injuries.

---

[2] The parties agreed that there were no factual issues in dispute and requested the court dispose of the declaratory judgment action through Cross-Motions for Summary Judgment.
[3] The district court properly exercised diversity jurisdiction of the declaratory judgment action pursuant to 28 U.S.C. § 1332. We may hear the appeal as a final order of the district court. See 28 U.S.C. § 1291.

3

At the time of the Wiggins incident, MIG held insurance policies with both Generali and PSM.  The Generali policy covered the maintenance and use of trucks and motor vehicles.  The policy stated, in relevant part:

**A.   Coverage**

> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".[4]

(A. 389)

After Wiggins served MIG with his complaint, Generali assigned defense counsel to represent the interests of MIG, but reserved its rights under the policy.  PSM, however, denied any obligation to defend or indemnify MIG in the tort suit under its general liability insurance.  The policy provided exclusions, which stated, in relevant part:

**2.   Exclusions**

> This insurance does not apply to:
>
> .         .         .
>
> g.    "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured.  Use includes operation and "loading or unloading". (A. 413).[5]

---

[4] The Generali policy contained several exclusions, including an exclusion for property moved by mechanical device.  Generali argued that the mechanical device exclusion should apply in the Wiggins action because the deliverymen were using the freight elevator.  The district court rejected this argument, and Generali did not appeal the court's order.

[5] The policy provided the following definition of "loading and unloading":

4

PSM argued that the court should read the term "use" of an auto in the Generali policy broadly to include the transportation of the bed between the vehicle and the final place of delivery, the purchaser's 19th floor apartment.  Further, PSM asserted that the court should apply the broad reading of the term "use" to the PSM exclusion clause, and thus conclude that PSM is not obligated to defend MIG.

The district court applied the broad definition of "use" to the Generali policy, and found that Generali was obligated to defend MIG.  It declined, however, to extend the definition to PSM's exclusion clause.  The court construed the exclusion narrowly, and held that it applied only to the unloading of the truck to the front door of the apartment building.  Thus, the court found Generali and PSM to be co-insurers of MIG.

## II.

7.  "Loading or unloading" means the handling of property:

a.  After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b.  While it is in or on an aircraft, watercraft or "auto"; or

c.  While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered; but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".(A. 419)

5

The district court's grant of summary judgment is subject to plenary review. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3rd Cir. 1993); see also Electric Ins. Co. v. Rubin, 32 F.3d 814, 815 (3rd Cir. 1994) (district court's interpretation of insurance contract subject to plenary review). The parties agree that New York state law controls the insurance policy interpretation.

The leading New York case interpreting the terms "loading and unloading" in an insurance policy is Wagman v. American Fidelity and Casualty Co., 304 N.Y. 490, 109 N.E.2d 592 (1952). In Wagman, the defendant insurance company issued a policy to a motor carrier which covered claims for damages arising out of the ownership, maintenance or use of the carrier's vehicles. The policy provided that "use of the automobile for the purposes stated includes the loading and unloading thereof." Id. at 492.

When faced with the task of interpreting the policy, the court noted that policies defining "use" as including "loading and unloading" have been subject to both narrow and broad interpretations. It stated:

> The broader construction, adopted in a majority of the jurisdictions which have passed upon the question, is that "loading and unloading" embrace, not only the immediate transference of the goods to or from the vehicle, but the "complete operation" of transporting the goods between the vehicle and the place from or to which they are being delivered.

Id. at 494. (citations omitted)

The court favored the "complete operations" doctrine over a narrower construction of the terms, asserting:

> The [broad] view impresses us as sounder, as more fully carrying out the aim of the policy to cover the entire operation of making commercial pickups and deliveries in the business of the insured carrier and, indeed, the courts in this state have already signified their approval of it.

Id. (citations omitted)

In the instant case, the district court noted New York's pragmatic adherence to the complete operation doctrine. Thus, it found that the Wiggins claim fell within the scope of Generali's policy coverage. The court refused, however, to apply the Wagman definition of "loading and unloading" to the exclusion clause in PSM's policy. It asserted that, under New York law, exclusions in insurance policies must be construed narrowly. See Seaboard Surety Company v. Gillette Company, 64 N.Y.2d 304, 311, 76 N.E.2d 272, 486 N.Y.S.2d 873 (1984) (exclusions from policy coverage are "not to be extended by interpretations or implication, but are to be accorded a strict and narrow construction.").

The court found the language of the exclusion clause to be ambiguous:

> It is not clear whether this exclusion concerns the moving of the bed frame to the Building or to its final position within the purchaser's apartment, or somewhere in between.

Applying a narrow construction, the court determined that the PSM policy only excluded coverage of the move to the apartment building. Because Wiggins's injuries occurred after the MIG

7

employees moved the bed into the building, the trial court held PSM obligated to defend MIG in the Wiggins suit.

We do not believe that New York law warrants the district court's distinction between insurance clauses and exclusion clauses. New York courts have applied the Wagman interpretation of the terms "loading and unloading" to both insuring and exclusion clauses. See Broome County Co-Operative Fire Ins. Co. v. Aetna Life and Casualty Co., 75 Misc.2d 587, 347 N.Y.S.2d 778 (Sup. Ct. 1973); Edmund Mayer Inc. v. Aetna Casualty and Surety Co., 62 Misc.2d 82, 308 N.Y.2d 667 (Sup. Ct. 1970); see also Cenven, Inc. v. Bethlehem Steel Corp., 41 N.Y.2d 842, 362 N.E.2d 251, 393 N.Y.S.2d 700 (1977) ("It would be unwise to proliferate fine distinctions from and exceptions to the now judicially determined language 'loading and unloading.'").

The district court relied on Muller v. Sun Indemnity Co. of New York, 96 N.Y.S.2d 140 (1950) and General Accident Insurance Company v. United States Fidelity and Guarantee Insurance Company, 193 A.D.2d 135, 602 N.Y.S.2d 948 (1993) to support its decision to apply a narrow interpretation to PSM's exclusion clause. We believe that the court's reliance on these opinions is misplaced. The Muller decision preceded the New York Court of Appeals decision in Wagman. Further, General Accident was based on Muller and makes no reference to the Wagman decision.

We conclude that the Wagman decision dominates New York law on the interpretation of "loading and unloading." It requires that this court in the instant case interpret "loading

8

and unloading" broadly to include movement of the bedframe from the delivery truck to the place of final delivery, the purchaser's 19th floor apartment.  Thus, the Wiggins claim falls squarely within the scope of PSM's exclusion clause, and PSM is not obligated to defend MIG in the tort action.

III.

Although the district court's holding that PSM was obligated to defend MIG relied upon a narrow construction of PSM's exclusion clause, it provided an alternative rationale for its holding.  The court noted:

> While the parties do not address the issue, the court notes that an Endorsement to PSM's general liability policy (document titled New York Changes-Amendatory Endorsement, CG 01 63 04 86) provides that:
>
> 3.  Any definition of "loading and unloading" does not apply.
>
> If this endorsement is applicable, as it appears on its face to be, then the claimed injuries clearly fall within the coverage of PSM's policy. (order at 10 n. 3).

The district court apparently found that, because the endorsement deletes any definition of "loading and unloading" from the PSM policy, the "loading and unloading" exclusion does not apply to the Wiggins action.

PSM contends that the endorsement eliminates the definition of "loading and unloading" in the policy, leaving New

9

York state law to define the terms.  We believe PSM's argument is persuasive.  The most logical interpretation of the endorsement is that it refers to the definition of "loading and unloading" contained within the policy.  In the absence of an agreed upon meaning, the parties are bound by New York state law.  Thus, under the "complete operation" doctrine as set forth in Wagman, PSM's exclusion clause applies to the Wiggins action.

IV.


In summary, under New York state law, the court must apply the "complete operations" doctrine to the interpretation of the terms "loading and unloading" in an insurance contract.  This broad interpretation applies to both insurance and exclusion clauses.  PSM's policy excludes coverage for incidents arising from the use, including loading and unloading, of a vehicle.  Thus, under Wagman, PSM is not obligated to defend MIG in the Wiggins action.

Further the court's alternative conclusion that PSM's Amendatory Endorsement rendered the PSM exclusion inapplicable to the Wiggins action is in error.  In the absence of a definition of "loading and unloading" in the policy, the court must apply New York state law.  Thus, the PSM exclusion clause applies to the Wiggins suit.

Accordingly, the judgment of the district court, insofar as it obligates PSM to defend MIG in the Wiggins action, will be reversed.  Costs taxed against Generali.

10